**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**


JASON WIMBERLY                                  Index No:__ __ _____ ___
PLAINTIFF                                       TRIAL BY JURY DEMANDED

V.


MELANIE STERN
DEFENDANT

SPRING BANK
DEFENDANT

JAY LAWRENCE HACK
DEFENDANT

GALLET, DREYER & BERKEY, LLP
DEFENDANT


# CIVIL COMPLAINT FOR VIOLATIONS OF THE FDCPA AND 42

# USC 1985

## PARTIES

Plaintiff Jason Wimberly is a citizen of the state of New York. Defendant Melanie Stern,(Stern) a natural person, is Community Reinvestment Act Officer for Spring Bank a, Federal Deposit Insurance Corporation regulated entity[1]. Defendant Spring Bank, (The Bank, or Spring) is a financial institution operating in the state and City of New York. Defendant. Gallet, Dreyer & Berkey, LLP (Gallet) is a law firm operating in the state and City of New York and is a "Debt Collector"for the purposes of the FDCPA. Defendant Jay L. Hack (Hack) is a natural person and is employed by Defendant Gallet as an attorney licensed to practice law before this court's bar and is also a Debt Collector pursuant to the FDCPA.

## JURISDICTION

This Court has jurisdiction pursuant to 28 USC § 1331 as the claims brought herein are so brought pursuant to Federal statutes thereby making this case one of federal question.

## VENUE

Venue is proper pursuant to 28 USC § 1391 as the events giving rise to the claims herein took place in the City of New York and the Borough of Manhattan. Further, venue is also proper because all Defendants either live and or work in the state and city of New York.

---

[1] As a financial institution, Spring Bank is also regulated by a variety of state and federal agencies.

## PRELIMINARY STATEMENT OF THE FACTS

1.  Sometime in October or November of 2020 Defendant Spring Bank through a management level  agreed to remove a past due loan balance from all 3 of  the Plaintiff's credit reports with the three national credit bureaus— Equifax,Inc.(Equifax) TransUnion,LLC (TransUnion) and Experian Information Solutions, Inc. (Experian).

2.  On information and belief, the Bank removed the entry from the Plaintiff's TransUnion and Equifax reports but not the Plaintiff's Experian reports.

3.  Sometime between October and January of 2021 the Plaintiff contacted the bank after noticing that the alleged loan was still reporting on his Experian reports to ask the bank to honor its previous promise to remove the entry.

4.  The Bank refused.

5.  *Post Facto* The Bank repudiated any knowledge of the agreement to remove the alleged loans

6.  Several emails were exchanged between Carol Guzman, loan officer at Spring Bank and Melanie Stern regarding the issue. The email exchange dispute grew progressively hostile between the Plaintiff and Stern whom denied the existence of an agreement as though the Plaintiff was lying, and later would aver to the Plaintiff via email that even if any such agreement was made whomever may have made it with the Plaintiff had no authority to do so and therefore such agreement is null and void as according to her she was the only one with the authority to bind the bank in this way.

7.  The Plaintiff warned Stern, that if she did not investigate and try to determine the validity of the Plaintiff's averments to her regarding the existence of the promise that he would sue to enforce the agreement/promise and would also seek monetary damages. Stern basically ignored the Plaintiff thenceforth.

8.  On March 30th, 2022, the Plaintiff commenced suit in New York State Court alleging breach of contract and other tort claims[2].

9.  As of the drafting of this complaint no decision has been rendered in that case

10. Shortly thereafter the Plaintiff wrote Stern again and advised her that the Bank had been sued.

11. Shortly thereafter the Plaintiff received correspondence from Hack via email stating:

---

[2] See, *Wimberly v. Spring Bank,* Case # 651535/2022, S.Ct. NY Cty.

"I am the former Chairman of the Business Law Section of the New York State Bar Association and I am one of the Bar Association's principal lecturers on consumer mortgage lending and consumer credit reporting, *so I know this field very well*. It is my conclusion that your lawsuit and claims are without any legal or factual basis and not only will Spring Bank be able to get a judgment against you for the full loan amount, but you will not be successful in *your spurious claims"*

"The promissory note that you signed provides that Spring Bank will collect attorneys' fees for defending your lawsuit. *If* we are required to defend against your claims, the legal fees to Spring Bank will be substantial and you will be liable for them. Y*ou will only succeed in turning a debt of approximately $1600 into many, many more thousands of dollars.*" [3]

*"If you persist,* Spring Bank will be required to defend aggressively in order to avoid getting a reputation that it is willing to settle baseless claims."

12. Hack engaged in some verbal saber rattling via email with the Plaintiff citing his experience as former Chair of the New York State Business Ethics committee, rattling off his curriculum vitae, and decades of experience practicing banking law (BSA/AML) and so forth.

---

[3] Statements of Attorney Hack to the Plaintiff via email

13. Not to be rude, but I couldn't understand his angle in doing so the only thing I could come up with is that he was making an "appeal to authority" with a decidedly hostile animus (god only knows why it was so personal to him, I sued the bank not him).

14. On information and belief, Hack had a personal relationship with Stern and was offended that I would have the temerity to "speak" to his friend in those terms completely ignoring the way she had spoken to me first.

15. Defendant Hack thereby attempted to hoodwink the Plaintiff by attempting to not only intimidate him into dropping his case in the state court by attempting to make him believe that a chance of success was nonexistent. Notably, I didn't ask Hack for legal advice ever, I am not his client, and his comments were threatening at worst, and improper at best, given our respective positions in that litigation.

16. Later Defendant Hack, in coordination with Stern concocted a proposed payment arrangement and rather imperiously "proposed" it to the Plaintiff as a chance to avoid certain defeat in state court and be on the hook (cue spooky ghost voice), for "*many many thousands of dollars more" and* that he would need to both drop the case and sign a "Confession of Judgment"

17. Federal law prohibits the use of Confessions of Judgment. The FTC specifically prohibits predatory lending practices such as confessions of judgment, cognovits, and

other waivers of the right to notice and opportunity to be heard in the event of suit[4].

Indeed, the rule explicitly states:

"In connection with the extension of credit to consumers in or affecting commerce, as

commerce is defined in the Federal Trade Commission Act, it is an unfair act or practice

within the meaning of Section 5 of that Act for a lender or retail installment seller directly

or indirectly to take or receive from a consumer an obligation that:

(1) Constitutes or contains a cognovit or confession of judgment (for purposes other than

executory process in the State of Louisiana), warrant of attorney, or other waiver of the

right to notice and the opportunity to be heard in the event of suit or process thereon."

18. The Bank alleges in its own answer to the Plaintiff's complaint in state court that the last

time the Bank received an alleged payment was August 21, 2018.

19. Last year, New York state enacted legislation to reduce the statute of limitations to three

years for legal actions aimed at recovering debt from consumers. The measure is part of

the Consumer Credit Fairness Act (CCFA), and reduces the statute of limitations from six

to three years, "compelling creditors to file claims in a timely manner and protecting

consumers from excessive interest charges and late fees".

20. This measure was codified into law in N.Y.C.P.L.R. 214-i.

---

[4] See 16 CFR § 444.2 *et seq.*

21. Indeed, the defendants had ample notice that the statute of limitations for consumer debt in New York, as would then be, changed from 6 years to 3 years because this fact was widely publicized in various news outlets and industry publications. Yet the defendant took no legal action to collect until the Plaintiff filed suit to enforce the promise the Bank had made him regarding the deletion of the alleged loans from his credit reports.

22. Spring Bank was created in October of 2007[5]. In a period of 15 years the Defendant Bank has apparently never taken any legal action to collect on any past due consumer loan. For example, according to the bank's call reports compiled by ibanknet.com, in June of 2022 the bank reported $32,000 in past due consumer loans, $31,000 in March of 2022, $29,000 in December of 2022, alone yet, the Plaintiff after searching various legal databases could not find a single case commenced ever by Spring Bank against an alleged individual borrower to collect on an allegedly past due or defaulted debt instrument. That is to say, that it is apparently not the Bank's standard practice to pursue judgments for past due or defaulted debts.

23. The Defendants spitefully commenced a counterclaim against the Plaintiff in state court in retaliation for filing suit to enforce the Banks promise despite knowing the statute of limitations for collecting on the alleged debt had passed.

24. Plaintiff realleges that both Defendants Gallet and Hack are debt collectors within the meaning of the FDCPA.

---

[5]https://banks.data.fdic.gov/bankfind-suite/bankfind/details/58668?activeStatus=0%20OR%201&bankfindLevelThreeView=Other%20Names&branchOffices=true&name=Spring%20Bank&pageNumber=1&resultLimit=25

25. Plaintiff alleges that Gallet and or Hack regularly engage in debt collection as they 1.

)Engage in initiating foreclosures both judicial and non-judicial. 2.) They send debt

notices to delinquent condo owners and co-op shareholders, and tenants 3.) They contract

with other entities to send these notices to delinquent condo owners, co-op shareholders,

and tenants.[6] "We defend our clients' interests in **all types of real estate matters,**

including construction contract disputes, construction defect disputes, easement disputes,

commercial and **residential landlord-tenant litigation**, disputes **between unit owners**

**and co-op and condo boards, mortgage foreclosures**, nuisance actions, ownership and

partnership disputes, sales contract disputes, brokerage commission claims, and toxic

mold and other environmental cases.'Gallet Dreyer & Berkey, LLP is widely

acknowledged as having one of the leading real estate practices in New York. When our

firm was founded in 1978, its focus was real estate. **To this day, real estate law remains**

**our firm's largest practice area.** …Our clients include **over 300 cooperative and**

**condominium boards** as well as some of the city's largest and most successful real estate

owners and developers. Our clients include publicly, privately, and closely-held entities

that own, operate, and develop billions of dollars worth of commercial and residential

property across the United States, including multifamily properties, shopping centers,

retail properties, and commercial office buildings. Our Real Estate Law Group has

extensive expertise in all areas of real estate law, ranging from highly sophisticated

transactions such as joint ventures, sale-leasebacks, tax-deferred exchanges, and site

development arrangements with governmental agencies to more conventional sales,

leasing, and financing. **We represent owners and lenders in real estate workouts, debt**

---

[6] https://www.gdblaw.com/co-op-condo

**restructuring, and foreclosures,** and represent debtors and creditors in distressed real estate bankruptcy proceedings.[7]

26. It is the settled law of this circuit that the FDCPA applies to attorneys who regularly pursue the collection of debts. "The Supreme Court has made it clear that the FDCPA applies to attorneys "regularly" engaging in debt collection activity, *including such activity in the nature of litigation. Heintz v. Jenkins,*514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). In Romea v. Heiberger Assocs.,163 F.3d 111, 116-17 (2d Cir. 1998), we held that three-day notices issued by a law firm pursuant to N.Y. Real Prop. Acts Law section 711 constitute[s] debt-related "communications," and that a lawyer's preparation of such notices constitutes debt collection activity, within the scope of the FDCPA." *Goldstein v. Hutton, Ingram, Yuzek, Gainen,* 374 F.3d 56, 60 (2d Cir. 2004)." Further, it is also settled law in this jurisdiction that foreclosure actions are attempts to collect debt that fall under the ambit of the FDCPA's provisions. "On July 23, 2018, the Second Circuit issued its opinion holding that "a foreclosure action is an 'attempt to collect a debt' as defined by the FDCPA." Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 82 (2d Cir. 2018) (citations omitted). Therefore, it is now settled in this Circuit that judicial foreclosure proceedings are within the purview of the FDCPA." *See Johnson-Gellineau v. Steine & Assocs.*, No. 16-CV-9945 (KMK), at *23 (S.D.N.Y. June 27, 2019)

27. 12 CFR 1006.26(b) bars defendants from attempting to collect a time-barred debt. That provision holds:  "Legal actions and threats of legal actions prohibited. A debt collector must not bring or threaten to bring a legal action against a consumer to collect a

---

[7] https://www.gdblaw.com/real-estate-law

time-barred debt. This paragraph  does not apply to proofs of claim filed in connection

with a bankruptcy proceeding."

28. Hack's statements to Plaintiff in his emails to him constitute "Oppressive" and  "Abusive

conduct" in violation of 12 CFR § 1006.14(a). This provision holds  In general, a debt

collector must not engage in any conduct the **natural consequence** of which is to harass,

oppress, or abuse any person in connection with the collection of a debt, including, but

not limited to, the conduct described in paragraphs (b) through (h) of this section."

29. Mr. Hacks emails to the Plaintiff constitute an attempt, or multiple attempts to collect a

debt for the purposes of the FDCPA.

30. Mr. Hack's emails were oppressive, abusive and harassing within the meaning of the

FDCPA and relevant CFPB rules.

31. Hack's initial email on May 18,2022  constitutes an initial communication launched in an

attempt to collect a debt. See Exhibit A.

32. 12 CFR § 1006.18(e)(1) holds that a: "debt collector must disclose in its initial

communication with a consumer that the debt collector is attempting to collect a debt and

that any information obtained will be used for that purpose. If the debt collector's initial

communication with the consumer is oral, the debt collector must make the disclosure

required by this paragraph again in its initial written communication with the consumer"

33. Hack made no such disclosure in his **initial communication** with the Plaintiff.

34. Hack in a letter entitled "NOTICE OF DEBT"[8] that was sent to the Plaintiff via email and

regular mail and included a false and misleading disclaimer:

" Notwithstanding that Gallet, Dreyer & Berkey, LLP is not a debt collector under

applicable law,and therefore this notice is not required. Please be advised, in connection

with your loan from Spring Bank, of the following facts:

(1) The amount of the debt: $1,581.99, representing principal of $949.81, accrued but

unpaid

interest of $592.18 through May 17, 2022 and accrued but unpaid late charges of $40.00.

Interest continues to accrue at the rate of $0.416 per day for each day after May 17, 2022

plus costs, expenses and attorneys fees as set forth in paragraph 13 of the promissory

note.

(2) The name of the creditor to whom the debt is owed: Spring Bank.

(3) Unless you, within thirty days after receipt of this notice, dispute the validity of the

debt, or

any portion thereof, the debt will be assumed to be valid by Gallet Dreyer & Berkey,

LLP.

---

[8] See Exhibit B.

(4) If you notify Gallet Dreyer & Berkey, LLP in writing within the thirty-day period that the

debt, or any portion thereof, is disputed, Gallet Dreyer & Berkey, LLP will obtain verification of

the debt or a copy of a judgment against you and a copy of such verification or judgment will be

mailed to you by Gallet Dreyer & Berkey, LLP.

(5) [not applicable] Upon your written request within the thirty-day period, Gallet Dreyer &

Berkey, LLP will provide you with the name and address of the original creditor, if

different from the current creditor."

35. Again, like a man straddling a line in the sidewalk, Hack is trying to circumvent the

FDCPA but at the same time comply with it in the event of possible litigation being

launched against him based on FDCPA violation. Hack isn't doing me a courtesy or favor

by sending this notice yet he states it's not required? So why waste the time,  the ink, the

stamp, and the envelope?

36. Hack attempted to mislead the Plaintiff into believing that neither he nor Gallet was

subject to the FDCPA in violation of the FDCPA's bar on unfair, or abusive, or deceptive

debt collection practice.

37. Hack, Gallet and Stern are all sophisticated entities with advanced degrees and multiple decades of experience in their respective fields and are responsible for designing and developing their respective policies around debt collection practices and though Stern or Spring may not be subject to the FDCPA, Gallet and Hack are.

38. The Plaintiff now commences this action..

## CAUSES  OF ACTION

### FIRST CAUSE OF ACTION

### CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHTS IN CONTRAVENTION OF 42 USC 1985(3)

39. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

40. The relevant provision of law holds that: "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, *for the purpose of depriving, either directly or indirectly, any person* or class of persons of the equal *protection of the laws*, or of *equal privileges* and *immunities* under the law*s;* or for the purpose of preventing or hindering the constituted authorities of any State or Territory

from giving or securing to all persons within such State or Territory the equal protection
of the laws;

41. Conspiracy generally speaking requires that

The defendant entered into an agreement with at least one other person;

To commit a tort or other wrong;

The act was in furtherance of the agreement; and

The plaintiff suffered economic loss or other harm as a result of the tortious or unlawful
act.

42. The New York Rules of Professional Conduct (NYRPC) govern the behavior of
attorneys. Rule 1.2(d) prohibits an attorney from counseounsel[ing] a client to engage, or
assist[ing] a client, in conduct that the lawyer knows is illegal or fraudulent, except that
the lawyer may discuss the legal consequences of any proposed course of conduct with a
client." NYRPC Rule 1.2(d) (emphasis added).

43. The Plaintiff alleges that on information and belief, Hack and Stern had several meetings
regarding the Plaintiff's claims launched in state court..

44. Plaintiff alleges That Hack and Stern both knew the statute of limitations had expired on
the putative debt.

45. Plaintiff alleges that Stern was so upset that the Plaintiff had the temerity to question her competence and upset the he insulted her (and believe me she had it coming for implying to the Plaintiff that he was a liar with respect to the existence of an alleged agreement) she encouraged Hack to attempt to sue for the debt to retaliate against the Plaintiff.

46. Plaintiff alleges that never before has Spring sued to collect a consumer loan debt

47. Plaintiff alleges that Hack either failed to counsel Stern on the potential legal consequences of filing a counterclaim against the Plaintiff under booth New York State and Federal law, or he did and they proceeded anyway. Notably, The CFPB rule provides that a collector violates the provisions of the FDCPA against collecting or attempting to collect on a time-barred debt, whether or not it knows that the debt is time-barred.  See CFPB's supplementary information at 42, 56, and 57[9] (references to this version are linked to in the corresponding footnote).

48. [W]here the lawyer becomes a motivating force by encouraging his client to commit illegal acts or undertakes to bring about a violation of law, he oversteps the bounds of propriety" (emphasis added); NYSBA Comm. Prof. Eth., Op. 974 (2013), citing to Ins. Law §6409(d) which imposes a monetary penalty for certain insurance fee arrangements and "other relevant statutes" for determining Rule 1.2(d) boundaries; NYSBA Comm. Prof. Eth., Op. 633 (1992), citing Code provisions for the proposition that "conduct that

---

[9]https://files.consumerfinance.gov/f/documents/cfpb_debt-collection_final-rule_2020-12.pdf

is illegal is unethical," and explaining that "[t]hus, it would be unethical for a law firm to assist a corporation or voluntary association in the practice of law in violation of any statute or court rule regulating the practice …

## COUNT I: CONSPIRACY TO VIOLATE THE PLAINTIFF'S RIGHT TO BE IMMUNE FROM SUIT OVER STALE DEBT PURSUANT TO CPLR 214-I

49. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

50. CPLR 214 i gives the Plaintiff immunity from suit over the alleged debt because the alleged debt was past the statute of limitations. Indeed, the Defendants claim the last payment received for the alleged debt was in August of 2018 some 4 years ago.

## COUNT II: CONSPIRACY TO VIOLATE THE PLAINTIFF'S RIGHT TO BE IMMUNE FROM SUIT UNDER THE FDCPA OVER STALE DEBT.

51. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

52. The FDCPA bars debt collectors from suing over time-barred debt.

53. The FDCPA bars even threatening to sue over time-barred debt let alone actually doing

so, the Defendants did both.

54. The Defendants sued the Plaintiff over time-barred debt.

## COUNT III: CONSPIRACY TO VIOLATE THE PLAINTIFF'S RIGHT TO BE IMMUNE FROM EVEN THE THREAT OF SUIT UNDER THE FDCPA OVER STALE DEBT.

56. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

57. The FDCPA bars even threatening to sue over time-barred debt let alone actually doing so, the Defendants did both.

## COUNT IV: CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHT TO BE FREE OF ABUSIVE, HARASSING OR OPPRESSIVE CONDUCT UNDER THE FDCPA

58. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

59. Defendant Gallet by and through Attorney Hack attempted to intimidate and induce in the Plaintiff a state of fear by threatening to pursue him not only for judgment on an unquestionably stale debt but also to pursue him for attorney's fees, despite being unable to determine whether the Plaintiff's claims regarding the promised deletion of these. Despite being well aware that any such clause to pay attorney fees in the event of litigation contained in the alleged promissory note would be or are so contained in what is essentially a contract of adhesion.

60. On information and belief, Hack designed any alleged promissory notes at issue.

61. A contract of adhesion is "[a] standard-form contract prepared by one party, to be signed by the party in a weaker position,. . . who has little choice about the terms." Black's Law Dictionary 318-19 (7th ed. 1999). Recognizing that mortgages are often adhesion contracts, bankruptcy courts have interpreted fee-shifting clauses **strictly against** the mortgage lender. In re Romano, 174 B.R. 342, 344-45 (Bankr. M.D. Fla. 1994); In re Barrett, 136 B.R. 387, 393 (Bankr. E.D. Pa. 1992); In re Roberts, 20 B.R. 914, 921 (Bankr. E.D.N.Y. 1982) (fee-shifting terms of form contracts "are to be most strongly construed against the mortgagee" *In re Parker,* No. 2:01-CV-207 (D. Vt. Oct. 31, 2000).

62. Hack again, has been practicing law for several years, and was chair of some kind of business ethics committee, his firm has a whole practice group dedicated to dealing with landlord-tenant, coop boards, condos and has initiated foreclosure proceedings, on information and belief Gallet and Hack were both aware that in adhesion contracts fee-shifting clauses are strictly against the

lender. Yet not only did Hack or Gallet author the alleged contract with an unconscionable clause for attorney's fees for a community bank chartered pursuant to the Community Reinvestment Act, that operates in Harlem and The Bronx. Indeed,  he even goes so far as to threaten the Plaintiff with it.

63. Hack, on behalf of Gallet also attempts to employ a Confession of Judgment and receive the same from the Plaintiff as means to both a means to intimidate the Plaintiff and bamboozle the Plaintiff in waiving his right to due process.

64. The Plaintiff also has a right to pursue his claims before a court of equity & law, for enforcement of his putative equitable right to enforce the promise to delete the entry.

65. Hack, in service to Stern and Spring Bank in his email to the Plaintiff expressly conditions the filing of a counterclaim and or any withdrawal of the same for the alleged debt upon the Plaintiff's acquiescence and "voluntary" dismissal of the same.

## COUNT V: CONSPIRING AGAINST THE PLAINTIFF'S RIGHT TO DUE PROCESS UNDER THE FIFTH AMENDMENT

66. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

67. The fifth amendment of the United States Constitution provides that "No person shall be deprived of life, liberty, or property, without due process of law"

68. Hack attempted to surreptitiously influence the Plaintiff into signing a confession of judgment and he attempted throughout his writings to induce the Plaintiff to accept his judgment on the legalities at issue in this matter by citation to his acumen he neglects to mention the legal effect of signing a confession of judgment.

69. The Plaintiff prior to Hack's mention of the same the Plaintiff had no idea what that was.

70. The effect of signing one is waiver of one's constitutional right to due process. A confession judgment is "an ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing." *Boosalis Options, LP v. Farnbacher Loles Motorsports, LLC,* No. 09-80316, 2010 U.S. Dist. LEXIS 12118, at *2 (N.D. Cal. Jan. 22, 2010) (citing D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 176 (1972)).

71. Hack knew this and had advised Stern of the same but yet did not bother to explain to the pro se non-lawyer Plaintiff what this was, and attempted to entice the Plaintiff in signing the same in exchange for more favorable payment terms to settle the alleged debt and conditioned the same upon dismissal of the state court action  by the Plaintiff.

72. Notably, the Plaintiff's suit in state court is not about the amount of the putative debt, nor even the accuracy of the debt; rather it's about the Bank's promise to remove and abstain from reporting it.

73. Hack's efforts are an attempt to get the Plaintiff to both drop his claim which has nothing to do with the alleged amount of the debt or from the Plaintiff's filling in state court has anything to do with the collectibility of the alleged debt and therefore not only is Hack's proposition regarding more favorable repayment terms to the Plaintiff its unethical because the amount, nor existence of the alleged debt is at issue in the Plaintiff's complaint.

74. Any proposed terms for the same had to be authorized by Stern and should be imputed to her as Stern has told the Plaintiff albeit possibly falsely that only she had the authority to bind the bank.

75.  A confession of judgment would abrogate the Plaintiff's rights to dispute the validity of debt before a court of law or equity should he elect to do so.

## COUNT VI:  FURTHER CONSPIRACY TO VIOLATE THE PLAINTIFF'S RIGHT TO DUE PROCESS.

76. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

77. The Plaintiff has a right to file suit to obtain the benefit of the Bank's promise

78. The Defendants' attempts to employ a confession of judgment is made as a part of an implicit offer by the Bank to 1.)  discontinue its frivolous counterclaim in exchange for the Plaintiff's signature on the same, 2.) Secure dismissal of the Plaintiff's claims for enforcement of the promise.

79. The attempt to secure confession of judgment is an attempt to negate the Plaintiff's right to seek enforcement of the promise along with the filling of a frivolous counterclaim for the express purpose of discouraging the Plaintiff from exercising his right of due process to seek judgment by the court on the issue.

80. Under New York law an action can be found to be frivolous when

(1) **it is completely without merit in law and cannot be supported by a reasonable argument for** an extension, **modification** or **reversal of existing law;**

or

(2) it is **undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another;** or

or

(3) it asserts material factual statements that are false.

*See* N.Y. Comp. Codes R. & Regs. tit. 22 § 130-1.1.

**SECOND CAUSE OF ACTION**

**INJURING THE PLAINTIFF'S RIGHTS BY COMMITTING STATUTORY**

**VIOLATIONS OF THE FDCPA.**

81. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here

82. The Fair Debt Collection Practices Act is a strict liability statute.

83. The FDCPA prohibits unfair and abusive conduct in the attempted collection of a debt and the Defendants as outlined above have engaged in unfair and abusive conduct prohibited by the FDCPA.

**COUNT I: FAILURE TO MAKE REQUIRED DISCLOSURES IN CONTRAVENTION**

**OF 15 USC 1692(g)(a).**

Plaintiff repeats and realleges all foregoing paragraphs as though alleged here

84. Based on the facts already enumerated the Defendants violated 15 USC 1692(g)(a) et.seq. which in relevant part holds:

85."Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

86. The Plaintiff wishes to call the Court's attention to attorney Hack's first communication to the Plaintiff via email and the Plaintiff's earlier allegation that this email constitutes an attempt to collect a debt.

87. Hack didn't include the information required to be communicated by this part of the FDCPA in his subsequent email proposing the Plaintiffs pay, dismiss his suit and sign a confession of judgment.

## COUNT II: FAILURE TO SEND A PROPER NOTICE OF DEBT WITHIN FIVE DAYS AS REQUIRED BY THE FDCPA

88. Plaintiff repeats and realleges all preceding paragraphs as though alleged here.

89. Hack, subsequent to his initial communications via email on May 18th, then sends the Plaintiff 6 days later on May 24th, 2022  a "Notice of Debt" Letter containing the required disclosures mandated by the FDCPA, However this was at least the 3rd communication between Plaintiff and Hack, as Hack engaged in further email correspondence the same day on May 18th, 2022.

## COUNT III: ENGAGING IN ABUSIVE PRACTICES IN CONTRAVENTION OF 15 U.S.C. 1692d

90. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here

91. Hack states to the Plaintiff "*If* we are required to defend against your claims, the legal fees to Spring Bank will be substantial and *you will be liable for them*. Y*ou will only succeed in turning a debt of approximately $1600 into many, many more thousands of dollars*." [10] (emphasis mine)

92. "In general, a debt collector must not engage in any conduct **the natural consequence** of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

93. This conduct includes language: As an example of prohibited conduct in connection with 1692d held that the "Use[of] obscene, profane, **or other language** that abuses the hearer or reader."[11]

        Attorney Hack goes on to write  to the Plaintiff   "and not only will Spring Bank be able to get a judgment against you for the full loan amount, but you will not be successful in *your spurious claims.*" Note the not infrequent use of the pronouns "you and your", Hack could have opted to use more neutral language along the lines of something "like these claims"  or "we disagree with your position" but did not and when an attorney of 40 years particularized experience practicing banking law chooses not to it is not unreasonable to infer the choice is deliberate.

---

[10] Statements of Attorney Hack to the Plaintiff via email
[11] See Pg. 4, CFPB Consumer Laws and Regulations Manual  V.2 (October 2012) at: https://files.consumerfinance.gov/f/documents/102012_cfpb_fair-debt-collections-practices-act-fdcpa_procedures.pdf

94. This language constitutes a threat to cause financial damage to the plaintiff and moreover abusively mischaracterizes the Plaintiff's  efforts to enforce the agreement or promise in state court as disingenuous, false, and meritless court action for the expressed purposes of deterring him from pursuing enforcement.

## COUNT IV:  FURTHER ENGAGEMENT OF ABUSIVE PRACTICES IN CONTRAVENTION  15 U.S.C. 1692d

95. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

96. Hack also attempts to secure a Confession of Judgment from the Plaintiff.

97.  The effect of signing a Confession of Judgment is waiver of the right to due process, i.e. to the right to defend against or prosecute claims in a court of equity or law and therefore by their very nature under circumstances such as those present in the case at bar are inherently oppressive and therefore in the context of debt collection, as governed by the FDCPA, constitute an abusive and or oppressive practice that contravenes 15 USC 1692d.

## COUNT V:  MAKING FALSE AND OR MISLEADING STATEMENTS IN

## CONTRAVENTION OF 15 U.S.C. 1692e

98. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

99. In his email to the Plaintiff, Hack makes references to his tenure as Chairman of the New York State Bar's Business Law Section: "I am the former Chairman of the Business Law Section of the New York State Bar Association and I am one of the Bar Association's principal lecturers on consumer mortgage lending and consumer credit reporting…"

100. The CFPB has interpreted 1692(e) to bar a debt collector from intimating association with any  agency of the federal or state government: A debt collector, in collecting a debt, may not use any false, deceptive, or misleading representation. For example,[ a debt collector may not]:Falsely represent or **imply** that he or she is **vouched for**, **bonded by,** or **affiliated with the United States or any state,** including the use of any badge, uniform, or similar identification.

101."In determining whether a collection letter violates the FDCPA, courts utilize an objective standard based on the "least sophisticated consumer." Jacobson v. Healthcare Fin. Servs., Inc.,″ *Rigerman v. Forster & Garbus LLP*, 14-CV-1805 (MKB), at *6 (E.D.N.Y. Mar. 16, 2015)

102. The statement(s) at issue are misleading for several reasons 1.) Under the least sophisticated consumer standard, Hack's utterly unnecessary attempt at engaging in bravado by rattling off his credentials to the Plaintiff as a former Chairman of The New York State Business Law

committee to a putative debtor could be perceived as either a direct or indirect statement that

Hack was vouched for, bonded by, or affiliated with the United States or a state because the

phrase includes the word Chairman, (which intimates authority and support) of the New York

State Bar and that they are vouching for Hack's interpretation of the rules governing this dispute

and are or would support Hack's actions in his  communications and the unlawful counterclaim

he filed against Plaintiff for an incontrovertibly alleged stale debt 2.) And the least sophisticated

consumer may not be aware that bar associations are not government agencies. 3.) And because

of their undeniably close association with not only with the courts and the governance of

lawyers, but also departmental agencies within the government who are so-often staffed and

overseen by lawyers it is neither unconscionable, bizarre, nor even idiosyncratic to conclude that

the least sophisticated or even naive and trusting consumer could conclude the words "New York

State" and Bar associations to be an arm of the government and moreover duly licensed lawyers

are in fact officers of the court, which is an arm of the government.  4.) The statement is also

misleading because it includes the words "Business Law" and "committee" because these words

to the least sophisticated consumer could be perceived as indicating that the Bar committee is

somehow involved in shaping the law and therefore could be perceived as indicating that it has a

**governing** role in the development of laws and rules regarding business practices.


103. "the least-sophisticated-consumer standard effectively serves its dual purpose: it (1) ensures

the protection of all consumers, even the naive and the trusting, against deceptive debt collection

practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic

interpretations of collection notices." *Clomon v. Jackson,* 988 F.2d 1314, 1320 (2d Cir. 1993).

## COUNT V: FURTHER MAKING FALSE AND OR MISLEADING STATEMENTS IN

## CONTRAVENTION OF 15 U.S.C. 1692e

104. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

105. Hack communicated to the Plaintiff that neither he nor Gallet, are debt collectors under the law and this is a false statement.

## COUNT VI: FURTHER MAKING FALSE AND OR MISLEADING STATEMENTS IN

## CONTRAVENTION OF 15 U.S.C. 1692e

106. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

107. Plaintiff alleges that Hack made false and misleading statements because his letter to the Plaintiff on May 24th via email contains a disclaimer indicating that that his letter is not required under the law. In this regard, the Plaintiff wishes to call the court's attention to the fact that nowhere in Defendant Hack's communication with the Plaintiff does he specifically mention the Fair Debt Collection Practices Act. This conduct is misleading because, A.) The wiley attorney (Hack) seeks thereby to induce the Plaintiff into falsely believing that his notice was not required

under the law. B.) He omits the very name of the law which he by his very actions was attempting to skirt. Indeed most collection notices from debt collectors to putative debtors make specific mention of the FDCPA in their disclosures presumably to avoid 1.) Running afoul of the statutory dictatess contained therein by complying with the letter and spirit of the FDCPA. 2.) To make clear to consumers their rights under the law.  Hack does the exact opposite and tries by and through his vague language to obfuscate the fact that the FDCPA is at issue in this matter.

108. Plaintiff alleges that another reason Hack did not include language regarding the FDCPA in his "Notice of Debt" is because he knew that so doing would or could provide the Plaintiff with a clue or a hint of a starting point on which to research the issue and if the Plaintiff found any relevant case law, that it was possible that the Plaintiff may be further embolden to attempt to civil prosecution under the FDCP .

109. Again, if Hack could go into the specifics of his experience practicing banking law, and lecturing on the law of credit reports to a pro se litigant and putative debtor, why then choose to be so vague about the potential applicability of the FDCPA? Indeed, he tells the Plaintiff his claims are "spurious" and that he will "not succeed" and  omits to send the notice on Gallet letterhead despite the ready availability of the same to him, cites his experience, and with respect to the omission of Galle letterhead he so omitted the same because not doing so could make the notice of debt look like an Gallet sanctioned and approved notice and might lend itself to creating the perception that Gallet regularly engages in debt collection activity and could provide the Plaintiff with a basis to conclude he had a valid cause of action against defendants for violating the FDCPA.

110. Indeed, Attorney Hack, even goes so far as to attempt frame his notice as not only "not required", but that he sends it as a "courtesy" to the Plaintiff, his pointing the Plaintiff's attention to his resume and acumen, legal "opinion" or 'conclusion" and his simultaneous or contemporaneous failure to acknowledge the FDCPA is no favor to the Plaintiff but rather is representative of a carefully deliberated attempt to mislead him.

## COUNT VI: FURTHER STILL MAKING FALSE AND MISLEADING STATEMENTS

## IN CONTRAVENTION OF 15 U.S.C. 1692e

111. Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

112. The CFPB has held that a debt-collector may not "threaten to take any action which is not legal or intended." The Defendant knew that suing over time-barred debt is not legal under the FDCPA.

## THIRD CAUSE OF ACTION:

## DECLARATORY JUDGMENT

113.Plaintiff repeats and realleges all foregoing paragraphs as though alleged here.

114. When examining an application for declaratory judgment "Courts examine 1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and 2) whether a judgment would finalize the controversy and offer relief from uncertainty. Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir.1969)." *ED Capital, LLC v. Bloomfield Inv. Res. Corp.*, 155 F. Supp. 3d 434, 443 (S.D.N.Y. 2016)

115. The Plaintiff alleges that several rule making authorities at both the state and Federal level have limited or otherwise circumscribed the use "Confessions of Judgment" and have otherwise expressed consternation regarding their use in a variety of contexts.[12][13][14][15] Given the state of controversy over their use in the context of *consumer* debt collection, and that New York State law has narrowed the circumstances in which they can be used but have not prohibited their use altogether in the consumer lending or debt context[16], and given that both the FTC and CFPB forbid their use in the consumer lending context and New York State allows it, and that a reasonable argument can be made that the use of the same in the context of consumer debt for the purposes of the FDCPA (a remedial consumer oriented statute) undermines the right to a.) dispute the validity of a debt pursuant to the FDCPA and to— b.)be immune from suit over stale debt, declaratory judgment could 'finalize the controversy' and 'offer relief from uncertainty' in the case at bar.

---

[12]https://velazquez.house.gov/media-center/press-releases/house-committee-passes-vel-zquez-measure-end-predatory-confessions#:~:text=A%20confession%20of%20judgment%20is,borrower's%20assets%20without%20a%20lawsuit.

[13] https://www.congress.gov/event/116th-congress/house-event/LC64251/text?s=1&r=9

[14] https://www.ftc.gov/business-guidance/resources/complying-credit-practices-rule

[15] https://www.fdic.gov/regulations/laws/rules/5000-2950.html

[16] *See* CPLR 3218(amended in 2019)

116. The Plaintiff seeks a declaration that 1.) The actual or attempted use of confessions of judgments by debt collectors constitute an abusive, unfair or deceptive practice pursuant to the dictates of the FDCPA and are therefore unlawful in that context.

**WHEREFORE**: The Plaintiff prays this court for the for the following relief: Declaratory judgment declaring that the use of Confessions of Judgment are an abusive practice in the context of the FDCPA and are therefore unlawful in that regard ;for judgment against the defendants for statutory violations of the FDCPA and for compensatory damages on all other claims and for punitive damages to the extent applicable by law.

Dated: September 5th, 2022
New York, NY

Respectfully submitted,
/s/ Jason Wimberly
Plaintiff, pro se
231 E. 117th St
Unit 5 D
New York, NY 10035