UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
JASON WIMBERLY,                                        :
                                                       :
                              Plaintiff,               :
                                                       :           22-cv-7581 (VSB)
              -against-                                 :
                                                       :        **OPINION & ORDER**
MELANIE STERN, SPRING BANK, JAY                        :
LAWRENCE HACK, GALLER, DREYER                          :
& BERKEY, LLP,                                         :
                                                       :
                              Defendants.  :
-------------------------------------------------------X

<u>Appearances</u>:

Jason Wimberly
*Pro Se Plaintiff*

Brett A. Scher
Adam Matthew Marshall
Kaufman Dolowich & Voluck LLP
*Counsel for Defendants Melanie Stern and Spring Bank*

Jared Maxwell Mogil
Joseph Salvo
Gordon Rees Scully Mansukhani LLP
*Counsel for Defendants Jay Lawrence Hack and Gallet, Dreyer & Berkey, LLP*


<u>VERNON S. BRODERICK, United States District Judge</u>:

        Before me are the motions (1) to dismiss of Gallet, Dreyer & Berkey, LLP ("GDB") and

Jay Lawrence Hack ("Hack," together with GDB, the "GDB Defendants"), (Doc. 9); (2) to

dismiss filed by Defendants Melanie Stern ("Stern") and Spring Bank (the "Bank," together with

Stern, the "Bank Defendants"), (Doc. 10); (3) to stay filed by pro se Plaintiff Jason Wimberly

("Plaintiff" or "Wimberly"), (Doc. 21, "Motion to Stay"); (4) to amend the complaint filed by

Plaintiff, (Doc. 58, "Motion to Amend"); and (5) for a temporary restraining order filed by

1

Plaintiff, (Doc. 62, "TRO Motion").  Because Plaintiff does state a claim for violation of the Fair

Debt Collection Practices Act ("FDCPA") against the GDB Defendants but fails to state a claim

for declaratory judgment or conspiracy, the GDB Defendants' motion to dismiss is GRANTED

IN PART and DENIED IN PART.  Because Plaintiff fails to state a claim against the Bank

Defendants, their motion to dismiss is GRANTED.  Because I do not have jurisdiction to grant

Plaintiff's Motion to Stay or TRO Motion, both motions are DENIED.

## I.     **Factual Background**[1]

Plaintiff asserts that in October or November of 2020, Spring Bank "agreed to remove a

past due loan balance from all 3 of the Plaintiff's credit reports with the three national credit

bureaus— Equifax, Inc. (Equifax), TransUnion, LLC (TransUnion), and Experian Information

Solutions, Inc. (Experian)."  (Complaint ¶ 1.)  The Bank removed the entry for the past due loan

(the "Loan") from Plaintiff's TransUnion and Equifax reports but did not remove it from his

Experian Report.  (*Id.* ¶ 2.)  "Sometime between October and January of 2021" Plaintiff

contacted the Bank and requested that the Loan be removed from his Experian report, but the

Bank refused.  (*Id.* ¶¶ 3–5.)  Plaintiff communicated with Stern, a Community Reinvestment Act

Officer for the Bank, by email, but Stern denied that the Bank ever agreed to remove the Loan

from his credit reports.  (*Id.* ¶ 6.)  "Plaintiff warned Stern [] that if she did not investigate and try

to determine the validity of the Plaintiff's averments to her regarding the existence of the

promise that he would sue to enforce the agreement/promise and would also seek monetary

damages."  (*Id.* ¶ 7.)

---

[1] The facts described in this section are taken from Plaintiff's complaint, (Doc. 1, "Complaint"), and other
documents of which I can take judicial notice, including the Court records from the parties' pending state action,
(Docs. 9-2, 9-3).  *See Baluch v. 300 W. 22 Realty, LLC*, No. 21-CV-9747 (JPO), 2023 WL 112547, at *1 (S.D.N.Y.
Jan. 5, 2023).  My reference to these allegations should not be construed as a finding as to their veracity, and I make
no such findings.

On March 30, 2022, Plaintiff initiated a lawsuit in the New York State Supreme Court titled *Wimberly v. Spring Bank, N.A.*, Index No. 651535/22 (Sup. Ct. N.Y. Co.) (the "State Action").  (Doc. 9-3.)  In that suit, Plaintiff asserts a claim for breach of contract against Spring Bank based on their handling of the Loan.  (*Id.*)  On May 23, 2022, Spring Bank filed an answer, raised various affirmative defenses, and asserted counterclaims in the State Action.  (Doc. 9-2.) Spring Bank has been represented by counsel from GDB and Kaufman, Dolowich and Voluck, LLP ("KDV") in the State Action.  (*Id.*; Doc. 59 at 3.)

## II.   Procedural History

Plaintiff initiated the present action by filing the Complaint on September 3, 2022. (Complaint.)  Plaintiff's first cause of action is titled "CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHTS IN CONTRAVENTION OF 42 USC 1985(3)."  (*See* Complaint ¶¶ 40– 80.)  Within this cause of action, Plaintiff identifies six counts of conspiracies to violate Plaintiff's rights under:  N.Y. CPLR 214-I, the FDCPA, the Fifth Amendment, and New York state law.  (*Id.*, the "Conspiracy Counts.")  Plaintiff's second cause of action is titled "INJURING THE PLAINTIFF'S RIGHTS BY COMMITTING STATUTORY VIOLATIONS OF THE FDCPA."  (*Id.* ¶¶ 81–112.)  Within this cause of action, Plaintiff identifies six counts of violations of 15 U.S.C. 1692(g)(a), (d), and (e).  (*Id.*, the "FDCPA Counts.")  Plaintiff's third cause of action is for declaratory judgment under the FDCPA.  (*Id.* ¶¶ 113–116.)

On November 11, 2022, the GDB Defendants and the Bank Defendants each filed a motion to dismiss.  (Docs. 9–10.)  On November 22, 2022, Plaintiff filed a motion to stay the State Action pending resolution of this matter.  (Doc. 21, "Stay Motion.")  On December 7, 2022, the Bank Defendants requested an extension of time to oppose the Stay Motion and Plaintiff filed a letter objecting to the extension request.  (Doc. 33.)  I granted Defendants'

extension request the next day.  (Doc. 36.)  On December 14, 2022, Defendants filed a

memorandum, (Doc. 39), and a declaration, (Doc. 38), opposing the Stay Motion.  On December

27, 2022, Plaintiff filed a forty-one page long "proposed" reply memorandum in support of the

Stay Motion.  (Doc. 47.)  That same day, Bank Defendants objected to the length of the proposed

reply memorandum.  (Doc. 48.)  On December 28, 2022, I ordered Plaintiff to file a reply

memorandum that was a maximum of 15 pages on or before January 9, 2023.  (Doc. 51.)  On

January 9, 2023, Plaintiff requested a ten-day extension of time to file his revised reply brief.

(Doc. 52.)  On January 11, 2023, I granted this request and gave Plaintiff a ten-day extension to

file his reply.  (Doc. 53.)  On January 20, 2023, Plaintiff requested, and I granted, another

extension request.  (Doc. 54.)  On February 6, 2023, Plaintiff filed his revised reply

memorandum in support of his Stay Motion.  (Doc. 55.)

On May 4, 2023, Plaintiff filed the Motion to Amend, in which he sought to (1) add KDV

and Adam Marshall ("Marshall," together with KDV, the "Prospective Defendants") as

defendants and (2) raise additional causes of action against the Bank Defendants and the GDB

Defendants (the "Existing Defendants").  (Doc. 58.)  Plaintiff filed a memorandum of law in

support of the Motion to Amend.  (Doc. 59.)  On May 25, 2023, Plaintiff filed the TRO Motion

with a memorandum, (Doc. 63), and an affidavit, (Doc. 64), in support.  On June 12, 2023, the

Bank Defendants filed a declaration opposing the TRO Motion.  (Doc. 65.)  After receiving two

extensions, (Docs. 61, 67), on July 28, the Bank Defendants filed a memorandum of law, (Doc.

71), and a declaration, (Doc. 70), opposing the Motion to Amend.

### III.   Legal Standards

#### A.  *Preliminary Injunction and Temporary Restraining Order*

Pursuant to "well-established principles of equity, a plaintiff seeking a permanent

injunction must satisfy a four-factor test before a court may grant such relief." *Kiss Nail Products, Inc. v. Shenzhen Kaylux Tech. Co. Ltd.*, No. 18CV5631JMASIL, 2020 WL 13573007, at *2 (E.D.N.Y. Sept. 24, 2020) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). "It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). A party seeking a preliminary injunction must demonstrate: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002).

Issuance of a TRO or preliminary injunction, "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005). Moreover, "the district court has wide discretion in determining whether to grant a preliminary injunction." *Id.* at 511.

### B. *Federal Rule of Civil Procedure 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the

full factual picture presented by the complaint, the particular cause of action and its elements,

and the existence of alternative explanations so obvious that they render plaintiff's inferences

unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts

alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.

*Kassner*, 496 F.3d at 237. "A complaint is deemed to include any written instrument attached to

it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v.

Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted). A

complaint need not make "detailed factual allegations," but it must contain more than mere

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Finally, although all allegations contained

in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### C. *Pro Se Plaintiff*

Even after *Twombly* and *Iqbal*, a "document filed pro se is to be liberally construed and a

pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Further, pleadings of a pro se party should be read

"to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d

Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).

Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a

plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717

F.3d 119, 124 (2d Cir. 2013). In other words, "the duty to liberally construe a plaintiff's

complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F.

Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

### D. *Motion to Amend*

District courts have "broad discretion in determining whether to grant leave to amend." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). "[L]eave to amend should be freely granted when 'justice so requires.'" *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)); *see Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules" (internal quotation marks and citation omitted).) However, a court may properly deny leave to amend "if the proposed claim could not withstand a motion to dismiss." *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Parties opposing a motion to amend "bear[] the burden of establishing that an amendment would be futile." *Bonsey v. Kates*, No. 13 Civ. 2708 (RWS), 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013).

### IV. <u>Discussion</u>

#### A. *Motions to Dismiss*

##### 1. FDCPA

Defendants move to dismiss all six of the FDCPA Counts under Plaintiff's second cause of action. (Docs. 9-6, 12.) To state a claim under the FDCPA, "(1) the plaintiff must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a debt collector, and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Rivelli v. Pennsylvania Higher Educ. Assistance Agency*, No. 218CV3322ADSGRB, 2019 WL 1473091, at *2 (E.D.N.Y. Apr. 3, 2019) (cleaned up).

a.   Bank Defendants

The Bank Defendants argue that because they are not debt collectors, Plaintiff cannot state a claim against them under the FDCPA.  (Doc. 12 at 5.)  I agree.  "[A] defendant can only be held liable for violating the FDCPA if she is a 'debt collector' within the meaning of the [FDCPA]."  *Feldman v. Sanders Legal Grp.*, 914 F. Supp. 2d 595, 599 (S.D.N.Y. 2012) (citing *Daros v. Chase Manhattan Bank*, 19 F. App'x 26, 27 (2d Cir. 2001).  The FDCPA defines a debt collector as a "who regularly collects . . . debts owed or due . . . another" or a person involved "in any business the principal purpose of which is the collection of any debts."  15 U.S.C. § 1692a(6).  In contrast, a creditor is a person "who offers or extends credit creating a debt or to whom a debt is owed" excluding anyone who "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).

Plaintiff does not assert that the Bank Defendants are trying to collect debt for another. Instead, the Bank Defendants are creditors of the Loan.  "District courts in the Second Circuit have interpreted [Section] 1692a(6) to exclude originating creditors and their assignees, as well as loan servicers who obtain a debt prior to default, from the definition of an FDCPA debt collector."  *Vallecastro v. Tobin, Melien & Marohn*, No. 3:13–CV–1441 (SRU), 2014 WL 7185513, at *3 (D. Conn. Dec. 16, 2014) (collecting cases); *cf. Maguire v. Citicorp Retail Serv., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (finding that the FDCPA does not apply to entities attempting to collect debts owed to them).  In fact, Plaintiff acknowledges that "Stern or Spring may not be subject to the FDCPA."  (Complaint ¶ 37.)  Accordingly, the Bank Defendants' motion to dismiss, (Doc. 10), is GRANTED as to all of the FDCPA Counts and Plaintiff's second and third causes of action are dismissed against the Bank Defendants.

b.  GDB Defendants

The GDB Defendants argue that as agents of Spring Bank, they are not subject to claims under the FDCPA.  (Doc. 9-6 at 12.)  This is incorrect.  Although "courts in this Circuit have been reluctant to impose liability under the FDCPA for statements made by creditors' attorneys during the course of debt collection litigation," *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868 ARR VVP, 2014 WL 4843947, at *12 (E.D.N.Y. Sept. 26, 2014), "statements made and actions taken in furtherance of a legal action are not in and of themselves, exempt from liability under the FDCPA," *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012).

Plaintiff's first FDCPA Count alleges that the GDB Defendants violated 15 U.S.C. § 1692g by failing to include in their "initial communication" certain statutorily required information.  (Complaint ¶¶ 84–87.)  Plaintiff asserts that this "initial communication" was an email by Hack encouraging him to dismiss the state action (the "Hack Email").  (Complaint ¶ 11.)  The GDB Defendants argue that this email was not an "initial communication" within the meaning of the FDCPA.  (Doc. 9 at 13–15.)  I agree.  In order to fall within the ambit of Section 1692g, the communication must be one which "a consumer receiving the communication could reasonably interpret it as being sent in connection with the collection of a debt."  *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) (cleaned up).  Courts consider the following factors as indicative that a communication was sent in connection with the collection of a debt:

> (1) the letter directed the recipient to mail payments to a specified address, (2) the letter referred to the FDCPA by name, (3) the letter informed the recipient that he had to dispute the debt's validity within thirty days, and (4) most importantly, the letter emphatically announced itself as an attempt at debt collection.

9

*Carlin v. Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017) (cleaned up).  In his email, Hack describes his qualifications in the field of business law, explains that he thinks Plaintiff's State Action is "without any legal or factual basis," and warns Plaintiff that if he persists with the State Action, "Spring Bank will be required to defend aggressively in order to avoid getting a reputation that it is willing to settle baseless claims."  (Complaint ¶ 11.)  None of the indicia are present in the quoted language of Hack's first email.[2]  The email clearly relates to the State Action and cannot be interpreted as related to the collection of Plaintiff's debt.  Accordingly, the GDB Defendants' motion to dismiss, (Doc. 9), is GRANTED as to the first FDCPA Count.

The second FDCPA Count alleges that the GDB Defendants violated Section 1692g by failing to "send a proper notice of debt within five days."  (*Id.* at ¶¶ 88–89.)  Pursuant to Section 1692g, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, [. . .] send the consumer a written notice containing" certain information.  Because Plaintiff does not identify an initial communication that was more than five days prior to the notice sent by the GDB Defendants, this count also fails.  *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 88 (2d Cir. 2018) (explaining that plaintiff's Section 1692(g) claim must fail "because the documents [she] has identified as defective initial communications . . . are not initial communications as defined by the FDCPA.")  Accordingly, the GDB Defendants' motion to dismiss, (Doc. 9), is GRANTED as to the second FDCPA Count.

In the third and fourth FDCPA Counts, Plaintiff alleges that the GDB Defendants engaged in abusive practices and violated Section 1692d by sending him the Hack Email and

---

[2] The Complaint only includes a quote from the email, the complete email was not provided as an exhibit to the Complaint and therefore I did not review it in connection with this motion.

offering him a confession of judgment.  Section 1692d prohibits debt collectors from "engag[ing]

in any conduct the natural consequence of which is to harass, oppress, or abuse any person in

connection with the collection of a debt."  15 U.S.C.A. § 1692d.  As explained above, the Hack

Email contains a description of Hack's qualifications, his opinion that the State Action will not

succeed, his opinion that Spring Bank will be able to recover attorneys' fees, and a statement that

Spring Bank will aggressively defend their claims.  Neither the Hack Email, nor the offer of a

confession of judgment, represent the "extrajudicial techniques of harassment designed to

humiliate or annoy a debtor" that Section1692d was designed to protect against.  *Okyere v.*

*Palisades Collection, LLC*, 961 F. Supp. 2d 508, 520 (S.D.N.Y. 2013).  Filing a lawsuit to collect

a debt—or here a counterclaim—even if that suit is without merit, does not violate Section 1692.

*See Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 WL 5848616, at *3

(E.D.N.Y. Sept. 30, 2020); *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 390

(E.D.N.Y. 2011).  Accordingly, the GDB Defendants' motion to dismiss, (Doc. 9), is

GRANTED as to the third and fourth FDCPA Counts.

The fifth and sixth FDCPA Counts allege that the GDB Defendants violated Section

1692(e) by making false and misleading statements.  (Complaint ¶¶ 98–112.)  Specifically,

Plaintiff asserts that the list of Hack's credentials (FDCPA Count 5A[3]) and the statements that:

(1) the GDB Defendants are not debt collectors (FDCPA Count 5B); (2) the notice sent by the

GDB Defendants was not required by law (FDCPA Count 6A); and (3) that they would file a

counterclaim for the loan debt (FDCPA Count 6B), were misleading.  (*Id.*)  Section 1692e

prohibits debt collectors from using "any false, deceptive, or misleading representation or means

in connection with the collection of any debt."  Deceptive communications and practices are

---

[3] The Complaint includes two FDCPA Counts labeled "Count V" and two labeled "Count VI" therefore I refer to
them in sequential order as Count 5A, Count 5B, Count 6A, and Count 6B.

those that "could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection." *Gabriele*, 503 F. App'x at 94.  Conduct is analyzed pursuant to the least sophisticated consumer test, which "is an objective inquiry directed toward ensuring that the FDCPA protects all consumers, the gullible as well as the shrewd." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (per curiam).  "The hypothetical least sophisticated consumer does not have the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (internal quotation marks omitted).  "[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law that the Court may resolve on a motion to dismiss." *Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 642 (S.D.N.Y. 2014) (internal quotation marks omitted).

The Hack Email contains a brief description of Hack's credentials, including that he is the "former Chairman of the Business Law Section of the New York State Bar Association" and "one of the Bar Association's principal lecturers on consumer mortgage lending and consumer credit reporting." (Complaint ¶ 99.)  Plaintiff asserts that the credentials misleadingly suggest he is affiliated with a government agency of the United States or State of New York.  (*Id.* at ¶ 102.) I disagree.  Hack's description of his credentials is accurate.  "FDCPA protection does not extend to every bizarre or idiosyncratic interpretation." *Easterling*, 692 F.3d at 233–34 (internal quotation marks and citation omitted).  Plaintiff has not sufficiently plead that the least sophisticated consumer would interpret Hack's credentials as misleading; therefore, the GDB Defendants' motion to dismiss, (Doc. 9), is GRANTED as to Count 5A of the FDCPA Counts.

Plaintiff also asserts that it is misleading that the Hack Email does not mention the FDCPA and states that the notice is "not required." This is incorrect. There is no requirement pursuant to Section 1692e that Hack specifically identify the FDCPA in the notice sent to Plaintiff. In addition, Hack's statement that the notice is "not required" is not misleading because, as explained *supra*, Plaintiff does not identify an initial communication that triggered the FDCPA's notice requirement. Accordingly, the GDB Defendants' motion to dismiss is GRANTED as to Counts 6A and 6B of the FDCPA Counts.

Finally, Plaintiff argues in Count 5B of the FDCPA Counts that the GDB defendants violated Section 1692e when "Hack communicated to the Plaintiff that neither he nor Gallet, are debt collectors under the law." (Complaint ¶ 105.) Whether or not a law firm is a debt collector under the FDCPA is determined on a case-by-case basis. When making this determination, courts consider:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62–63 (2d Cir. 2004). Plaintiff pleads that the GDB Defendants "regularly engage in debt collection as they 1.) Engage in initiating foreclosures both judicial and non-judicial. 2.) They send debt notices to delinquent condo owners and co-op shareholders, and tenants 3.) They contract with other entities to send these notices to delinquent condo owners, co-op shareholders, and tenants." (Complaint ¶ 25.) At this stage, accepting Plaintiff's statements as true, it is possible that the

GDB Defendants are debt collectors.  If the GDB Defendants are debt collectors, then the statement that they are not would be false and could be a violation of Section 1692e.  The GDB Defendants argue that even if they were considered debt collectors, Plaintiff does not identify an initial communication in connection with the collection of any debt that would trigger the FDCPA's notice requirements.  (Doc. 9-6 at 15.)  Although this is correct, Section 1692e is not limited to mandatory notices and bars the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt."  Accordingly, the GDB Defendants' motion to dismiss is DENIED as to Count 5B of the FDCPA Counts.

### 2.  Declaratory Judgment

Plaintiff's third cause of action is for declaratory relief under the FDCPA.  (Complaint ¶¶ 113–116.)  "Plaintiff seeks a declaration that 1.) The actual or attempted use of confessions of judgments by debt collectors constitute an abusive, unfair or deceptive practice pursuant to the dictates of the FDCPA and are therefore unlawful in that context."  (*Id.*)  The Bank Defendants argue that Plaintiff's claim for declaratory judgment must fail because it is not a valid cause of action under the FDCPA.[4]  (Doc. 12 at 18.)  The Bank Defendants are correct, that law is clear that "neither equitable nor declaratory relief is available to private litigants under the FDCPA." *Allen v. United Student Aid Funds, Inc.*, No. 17-CV-8192 (VSB), 2018 WL 4680023, at *6 (S.D.N.Y. Sept. 28, 2018); *see Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 298 (E.D.N.Y. 2005) (collecting cases and explaining that "[t]he FDCPA contains no express provision for injunctive or declaratory relief in private actions").  Accordingly, the Bank Defendants' motion to dismiss, (Doc. 10), is GRANTED as to Plaintiff's third cause of action

---

[4] The GDB Defendants also argue that this claim fails for lack of jurisdiction, which I need not address because the claim is not legally valid.  (Doc. 9-6 at 25.)

and the third cause of action is dismissed in its entirety.

### 3.  Conspiracy Under 42 USC § 1985(3)

Defendants move to dismiss all of six Conspiracy Counts of Plaintiff's first cause of action.  (Docs. 9, 12.)  In order to state a claim pursuant to Section 1985, Plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983).  Additionally, "a § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (internal quotation marks and citation omitted).  Plaintiff fails to adequately plead any of the Conspiracy Counts against the Existing Defendants.

Nowhere in the Complaint does Plaintiff suggest any sort of discriminatory animus attributable to the Defendants.  In fact, Plaintiff himself pleads that the counterclaim was filed because "Stern was so upset that the Plaintiff had the temerity to question her competence and upset that he insulted her."  (Complaint ¶ 45.)  This allegation concerning the proposed reason for filing the counterclaim does not relate to discrimination.  Accordingly, Plaintiff has not sufficiently pled the facts necessary to support any of the Conspiracy Counts of his first cause of action.

However, even if Plaintiff did plead the requisite discriminatory animus, the Conspiracy Counts would still fail.  In his first Conspiracy Count Plaintiff asserts that Defendants violated

his "right to be immune from suit over stale debt pursuant to" N.Y. CPLR. § 214.  (Complaint ¶¶ 49–50.)  Although I must accept the factual allegations contained in the Complaint as true, the same is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Although Plaintiff labels the counterclaim against him as "untimely" and "past the statute of limitations," this is incorrect.  As Plaintiff explains, the plain language of the statute states that the revised statute of limitations was not in effect until 150 days after the act became law, or April 7, 2022, over a week after Plaintiff initiated the state court action.  (Doc. 12 at 8–9 (citing L. 2021, c. 593, § 15); Complaint ¶ 8.)  Count one of the Conspiracy Counts cannot survive dismissal.

"Section 1985(3) provides no substantive rights itself; rather, it merely provides a remedy for violation of the rights it designates.  As a result, to maintain a claim pursuant to [Section] 1985(3), there must be some predicate constitutional right which the alleged conspiracy violates."  *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 148 (E.D.N.Y. 2022) (internal quotation marks and citation omitted).  Because Plaintiff's FDCPA claims fail, so too must his conspiracy claims based on alleged violations of the FDCPA.  *Knight v. City of New York*, 303 F. Supp. 2d 485, 501 (S.D.N.Y. 2004), *aff'd*, 147 F. App'x 221 (2d Cir. 2005).  Accordingly, counts two, three, and four of the Conspiracy Counts cannot survive dismissal.

Finally, claims under Section 1985 do not apply "to private conspiracies that are aimed at a right that is by definition a right only against state interference."  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993) (internal quotation marks omitted).  The only constitutional right that Defendant identifies, the right to due process, is limited to state actors and therefore cannot support a Section 1985 claim against private entities.  *See Johnson v. Nextel Communications, Inc.*, 763 F. App'x 53, 57–58 (2d Cir. 2019) (affirming district court finding

that claim against a private party for deprivation of rights to a jury trial, effective counsel, and to access courts was not viable under Section 1985(3)).  Therefore, counts five and six of the Conspiracy Counts cannot survive dismissal.

Accordingly, the motions to dismiss of the GDB Defendants, (Doc. 9), and the Bank Defendants, (Doc. 10), are GRANTED as to the Conspiracy Counts and Plaintiff's first cause of action must be dismissed.

### B.  *Motion to Amend*

In his Motion to Amend, Plaintiff seeks to:  (1) add the Prospective Defendants so that he may pursue claims under the FDCPA, 42 USC § 1985, Title VI of the Civil Rights Act of 1964 ("Title VI") and New York General Business Law ("N.Y. G.B.L.") § 601 based on their involvement as counsel for Spring Bank in the State Action; and (2) add claims against Spring Bank under Title VI and N.Y. G.B.L. § 349.  Because the proposed new claims against the Prospective Defendants and Spring Bank "could not withstand a motion to dismiss," *Lucente*, 310 F.3d at 258, the Motion to Amend is DENIED.  I address each of the proposed claims below.

### 1.  FDCPA

Plaintiff asserts that the Prospective Defendants have violated the FDCPA by pursuing Spring Bank's counterclaim against him and seeking attorneys' fees in the State Action.  (*See* Doc. 59.)  Plaintiff does not identify the provision of the FDCPA the Prospective Defendants have violated.  Because Plaintiff alleges that the Prospective Defendants involvement in the State Action is "abusive," (*Id.* at 13), he seems to be asserting a violation of Section 1692d.  Pursuant to Section 1692d, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C.A. § 1692d.

As explained *supra*, the filing of a lawsuit to collect a debt, regardless of the merit of the suit, is not a violation of the FDCPA.  *Finch*, 2020 WL 5848616, at *3; *Lane*, 767 F. Supp. 2d at 390.  Further, stating that Plaintiff may be liable for attorneys' fees could only violate the FDCPA "absent a contract between the parties authorizing an award of attorneys' fees." *Mizrachi v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, 833 F. App'x 881, 883 (2d Cir. 2020).  Here, the Prospective Defendants have a basis in law to seek attorneys' fees since there is a contract whereby Plaintiff agreed to be responsible for attorneys' fees in the event of a debt collection action.  (Doc. 59-1 at 12.)  Accordingly, Plaintiff has not asserted any conduct by the Prospective Defendants that could amount to a violation of the FDCPA.

### 2.  Section 1985

Plaintiff argues that by seeking attorneys' fees and pursuing a counterclaim against him in the State Action, the Prospective Defendants have conspired with the Existing Defendants to "deter the plaintiff from attending, testifying, and advocating for himself in the judicial process . . . with intent to deny him the equal protection of the laws, and or to injure him or his property for lawfully enforcing, or attempting to enforce, his rights."  (Doc. 59 at 25–26.)

As explained *supra*, Plaintiff's claims against the Existing Defendants for conspiracy to violate Section 1985 cannot survive dismissal.  For the same reasons, he cannot assert the same claim against the Prospective Defendants.  Nowhere in the Complaint or Motion to Amend does Plaintiff offer any facts that suggest, or from which I can infer, discriminatory animus.  The closest that Plaintiff reaches is explaining that he "is a member of the low income or targeted population Spring receives federal funding to serve," but Plaintiff does not explain how this motivated the Proposed Defendants.  (Doc. 59 at 20.)  Discriminatory animus cannot be pled by Plaintiff's mere assertion of membership of a particular group.  *Thomas v. Roach*, 165 F.3d 137,

147 (2d Cir. 1999) (finding that although plaintiff "who is black, is a member of a protected class," such assertion is insufficient to "demonstrate that the officers selected their course of action because of his race."). Accordingly, Plaintiff has not shown that claims under Section 1985 against the Prospective Defendants would survive a motion to dismiss.

### 3. Title VI

Plaintiff alleges that both the Proposed and Existing Defendants have engaged in retaliation under Title VI by filing a counterclaim against him in the State Action and seeking attorneys' fees pursuant to the fee shifting clauses contained in Plaintiff's loan agreement. (Doc. 59 at 18.)

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In other words, "Title VI prohibits intentional discrimination based on race in any program that receives federal funding." *DT v. Somers Cent. Sch. Dist.*, 348 F. App'x. 697, 699 (2d Cir. 2009) (cleaned up). "To state a claim for Title VI retaliation, a plaintiff must show: (1) participation in a protected activity, that was known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protected activity and the defendants' adverse action." *Ctr. for Transitional Living, LLC v. Advanced Behav. Health, Inc.*, No. 3:20-CV-01362 (KAD), 2021 WL 930082, at *5 (D. Conn. Mar. 11, 2021).

As an initial matter, Plaintiff cannot pursue a Title VI claim against Marshall, Hack, or Stern because individuals cannot be sued under Title VI. *Otegbade v. N.Y.C. Admin. for Child. Servs.*, No. 12-cv-6298 KPF, 2015 WL 851631, at *2 n.5 (S.D.N.Y. Feb. 27, 2015) ("Plaintiff . .

. cannot sue individuals under Title VI").  Plaintiff also cannot state a claim under Title VI

against KDV or GDB because Plaintiff does not assert that these law firms receive federal funds,

and "[i]n order to establish a viable claim under Title VI, the defendant must be a recipient of

federal funding."  *Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-CV-2553 DRH ETB, 2013

WL 5652503, at *9 (E.D.N.Y. Oct. 16, 2013); *see Rojas v. Port Auth. of N.Y. & N.J.*, No. 15 Civ.

6185 (NGG) (PK), 2016 WL 5921777, at *12 (E.D.N.Y. Oct. 11, 2016).

Further, Plaintiff cannot state a Title VI claim because he does not plead that he engaged

in any protected activity that caused him to be retaliated against.  Plaintiff claims that he was

"adversely treated for speaking out against [Spring Bank's] allegedly discriminatory acts

directed toward a member or members of a protected class."  (Doc. 59 at 2.)  The "adverse

treatment" that Plaintiff alleges is the filing of a counterclaim and seeking of attorneys' fees.

Plaintiff brought the State Action because of an alleged breach of contract and, in that complaint,

did not allege any discriminatory conduct.  (Doc. 9-3.)  Accordingly, the counterclaim cannot be

said to have been filed in retaliation for any protected activity.

### 4.  N.Y. G.B.L. § 601

I deny Plaintiff leave to amend the Complaint to state a claim under Section 601 against

the Prospective Defendants because this provision "does not supply a private cause of action."

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017).

### 5.  N.Y. G.B.L. § 349

Plaintiff seeks to amend the Complaint to state a claim against Spring Bank for violation

of N.Y. G.B.L. § 349(a).  Section 349(a) prohibits "[d]eceptive acts or practices in the conduct of

any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen.

Bus. L. § 349.  To state a claim pursuant to this statute, a Plaintiff must plead "that a defendant

has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (cleaned up).  "New York courts apply an objective definition of deceptive acts and practices, concerned only with those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 227 (S.D.N.Y. 2011) (cleaned up).

Plaintiff asserts that Spring Bank violated Section 349 by including a provision in its promissory notes requiring lenders who default "to the extent permitted by law [] agree to pay all expenses of collection . . . [including] reasonable attorneys' fees, court costs, and other legal expenses." (Doc. 59-1 at 12.)  Nothing about this practice is misleading.  "Under New York law, provisions in promissory notes for the payment of attorney's fees are enforceable." *AAI Recoveries, Inc. v. Pijuan*, 13 F. Supp. 2d 448, 452 (S.D.N.Y. 1998).  Although courts have found that "requesting attorneys' fees in debt collection actions without any basis in law is deceptive," *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 116 (S.D.N.Y. 2016), Plaintiff signed a contract with Spring Bank that contained a provision for attorneys' fees.  I am not aware of any case (nor does Plaintiff identify any) where a demand for attorneys' fees was found to be deceptive when it was authorized by contract.  Additionally, Plaintiff fails to plead any injury that he has suffered because of this provision.  Accordingly, the Title VI claim against Spring Bank could not survive a motion to dismiss.

### C.  *Motion to Stay and Motion for a Temporary Restraining Order*

In both the Motion to Stay and the TRO Motion, Plaintiff argues that he is entitled to an order staying the State Action.  (Doc. 22; Doc. 62 at 1–2.)  Because the relief requested in the

Motion to Stay and TRO Motion is barred by the Anti-Injunction Act, I need not consider whether Plaintiff would otherwise be entitled to a preliminary injunction and both motions are DENIED.  *See Watkins v. Ceasar*, 88 F. App'x 458, 459 (2d Cir. 2004) (affirming denial of motion for a preliminary injunction where relief was in violation of the Anti-Injunction Act).

### 1.   Applicable Law

Pursuant to the All-Writs Act, federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  However, "[t]his grant of authority is limited by the Anti-Injunction Act."  *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004).  Pursuant to the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in [the] aid of its jurisdiction, or [3] to protect or effectuate its judgments."  28 U.S.C. § 2283; *see also Mitchum v. Foster*, 407 U.S. 225, 230 (1972) ("[T]he national policy forbid[s] federal courts to stay or enjoin pending state court proceedings except under special circumstances" (citation omitted)).  "Since the Anti-Injunction Act's prohibitory provision rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction."  *United States v. Schurkman*, 728 F.3d 129, 135 (2d Cir. 2013) (cleaned up).  "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."  *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).

### 2.   Application

Plaintiff asserts the same arguments in both his Motion to Stay and TRO Motion,

claiming that two of the three exceptions to the Anti-Injunction Act apply because (1) statutes expressly authorize this Court to stay the State Action and (2) staying the State Action is necessary in the aid of this Court's jurisdiction.  Despite these claims, none of the exceptions to the Anti-Injunction Act allow me to stay the State Action.

As to the first exception, Plaintiff identifies "42 USC 1985 and the FDCPA 15 USC 1692" as statutes that "expressly authorize" a stay of the State Action.  (Doc. 22 at 12.)  It is well established that the "expressly authorized" exception applies where a statute "clearly creating a federal right or remedy enforceable in a federal court of equity[ ] could be given its intended scope only by the stay of a state court proceeding."  *Mitchum*, 407 U.S. at 238.  This exception has been described as "generally reserved for state court actions *in rem*."  *Wyly v. Weiss*, 697 F.3d 131, 137 (2d Cir. 2012).  Staying an *in personam* state action under this exception has only been found to be "appropriate under certain limited circumstances," such as a case where a far-advanced, complex, multidistrict class action was on the verge of settlement.  *Id.* at 138.  In the present action, both statutes identified by Plaintiff may be given their intended scope without a stay of the State Action.  In fact, both statutes could be properly enforced in state court.  Federal and State courts have concurrent jurisdiction over claims under Section 1985, *see Robinson v. Allstate*, 706 F. Supp. 2d 320, 325 (W.D.N.Y. 2010) (collecting cases), and under the FDCPA, *Friedman v. Cavalry Portfolio Servs., LLC*, No. 23-CV-0304 (BMC), 2023 WL 3708996, at *1 (E.D.N.Y. May 30, 2023).  Since the statutes may be enforced in state court "no stay of a state action is required to secure [their] intended scope, and consequently the first exception to the Anti-Injunction Act is . . . . inapplicable."  *Sierra v. City of New York*, 528 F. Supp. 2d 465, 468 (S.D.N.Y. 2008).

Plaintiff also asserts that a stay is necessary to protect the Court's jurisdiction.  (Doc. 63

at 4.) I disagree. "Under the Anti-Injunction act, the 'in aid of jurisdiction' exception applies 'where the effect of [a state court proceeding] would be to defeat or impair the jurisdiction of the federal court.'" *Wyly*, 697 F.3d at 137 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922)). Plaintiff asserts that the State Action should be stayed to avoid the risk that this matter could be impacted by factual findings in the State Court under the doctrine of *res judicata.* (Doc. 63 at 3.) This argument is unpersuasive because even if the State Action would resolve factual questions that are at-issue in this case, that would not be grounds to stay the State Action. Although there are related facts between the State Court Action and this proceeding, "to justify an injunction of a state court action, it is not sufficient to show that the matter properly before a state court embraces issues within the compass of the federal suit, even if the federal court has exclusive jurisdiction over its case." *Vernitron Corp. v. Benjamin,* 440 F.2d 105, 108 (2d Cir. 1971) (internal quotation marks and citation omitted). In fact, the Second Circuit has explained that "[t]here is no reason why [a] state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation." *Ret. Sys. of Ala.*, 386 F.3d at 429 (quotation marks omitted). Similarly, as the Second Circuit explained in the context of the similar doctrine of collateral estoppel, State Court preclusion "should be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal." *Vernitron Corp.*, 440 F.2d at 108 (2d Cir. 1971) (reversing and remanding decision to stay state court proceedings based on doctrine of estoppel).

Accordingly, because none of the exceptions to the Anti-Injunction Act apply, I do not have authority to stay the State Action and must deny Plaintiff's Motion to Stay and TRO Motion.

V.      **Conclusion**

For the reasons stated above:

- The GDB Defendants' motion to dismiss, (Doc. 9), is GRANTED IN PART and DENIED IN PART.

- The Bank Defendants' motion to dismiss, (Doc. 10), is GRANTED.

- Plaintiff's motion to amend the Complaint, (Doc. 58), is DENIED.

- Plaintiff's motion to stay the State Court Action, (Doc. 21), and his motion seeking a temporary restraining order enjoining Defendants from pursuing their counterclaims in the State Court Action, (Doc. 62), are DENIED.

The Clerk of the Court is respectfully directed to close the pending gavels at Docs. 9, 10, 21, 58 and 62 and mail a copy of this Order to the Plaintiff.

SO ORDERED.

Dated:  October 4, 2023
        New York, New York

Vernon S. Broderick
United States District Judge