UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON WIMBERLY,<br><br>Plaintiff,<br><br>-against-<br><br>MELANIE STERN, SPRING BANK, JAY LAWRENCE HACK, GALLET, DREYER & BERKEY, LLP,<br><br>Defendants. | 22-CV-7581 (VSB)<br><br>**OPINION & ORDER** |

Appearances:

Jason Wimberly
New York, NY
*Pro Se Plaintiff*

Brett A. Scher
Adam Matthew Marshall
Kaufman Dolowich & Voluck LLP
Woodbury, NY
*Counsel for Defendants Melanie Stern and Spring Bank*

Alexandra Mormile
Jared Maxwell Mogil
Joseph Salvo
Sarah Prager
Gordon Rees Scully Mansukhani LLP
New York, NY
*Counsel for Defendants Jay Lawrence Hack and Gallet, Dreyer & Berkey, LLP*

VERNON S. BRODERICK, United States District Judge:

Before me are the following motions: (1) Plaintiff Jason Wimberly's ("Plaintiff or "Wimberly") motion for reconsideration of my September 12, 2025 Opinion & Order (the "Opinion"), (Docs. 114, 115, 116, 118), pursuant to Federal Rule of Civil Procedure 59(e) and 60(b); (2) Plaintiff's motion for an extension of time to file his notice of appeal, (Doc. 120); (3)

Plaintiff's motion for sanctions, (Docs. 148, 149); and (4) a cross-motion for sanctions, filed by Defendants Melanie Stern ("Stern") and Spring Bank (the "Bank") (collectively, the "Bank Defendants"). For the reasons stated below, Plaintiff's motion for reconsideration is DENIED IN PART and GRANTED IN PART, with all claims in this case dismissed without leave to amend. Plaintiff's motion for sanctions is DENIED and the Bank Defendants' motion for sanctions regarding a filing injunction is DENIED. Plaintiff's motion for an extension of time to file his notice of appeal is also DENIED.

## I. **Background and Procedural History**[1]

In my prior September 12, 2025 Opinion, I: (1) denied Plaintiff's first motion for reconsideration; (2) granted Defendants Jay L. Hack ("Hack") and Gallet Dreyer & Berkey, LLP's ("GDB") (collectively, the "GDB Defendants") motion for reconsideration and dismissed Plaintiff's one remaining claim under 15 U.S.C. § 1692e, because Plaintiff lacks Article III standing for this claim; and (3) denied without prejudice Plaintiff's motion seeking leave to appeal my previous October 4, 2023 opinion in forma pauperis, with leave to refile this request to appeal the Opinion. (*See generally* Doc. 112.)

On September 27, 2025, Plaintiff submitted a letter highlighting "several errors" in my September 12, 2025 Opinion. (Doc. 114 at 1.) On October 19, 2025, Plaintiff submitted another letter regarding his "[f]orthcoming [p]ost [d]ismissal [m]otion for [r]econsideration," (Doc. 115), and on October 21, 2025, Plaintiff filed his motion for reconsideration of my Opinion and an accompanying memorandum of law and exhibits, (Docs. 117–18).[2] One day later, on October

[1] I assume the parties' familiarity with the relevant facts and procedural history, which are set forth in my prior October 4, 2023 Opinion. (*See* Doc. 78.)

[2] Because I liberally construe pro se Plaintiff's submissions and interpret them to raise the strongest arguments that they suggest, *see Brown v. Zeta Charter Sch.*, No. 23-CV-5593, 2024 WL 4265691, at *1 (S.D.N.Y. Sept. 23, 2024), I interpret his various reconsideration letters and motions as one motion for reconsideration.

22, 2025, Plaintiff filed his motion for an extension of time to file a notice of appeal, (Doc. 120), and filed a notice of appeal regarding the September 12, 2025 Opinion that same day, (Doc. 119). On October 24, 2026, GDB Defendants filed a letter requesting that I strike Plaintiff's "second reconsideration motion." (Doc. 121.) On November 12, 2025, I directed the GDB Defendants to respond to Plaintiff's motion for an extension of time to file his notice of appeal and ordered Plaintiff to file an affidavit or declaration on or before December 9, 2025 demonstrating the existence of possible medical conditions and mailing issues that purportedly hindered his appeal and explaining "why or how they prevented him from timely filing his notice of appeal." (Doc. 128 at 1.) On November 19, 2025, Plaintiff filed his opposition to GDB Defendants' request to strike his motion for reconsideration and an application to file the brief and accompanying medical exhibits with redactions and under seal, (Doc. 132), which I granted, (Doc. 135).

On December 9, 2025, Bank Defendants filed their opposition to Plaintiff's motion for reconsideration and an accompanying declaration, (Docs. 138, 139), which incorporates the GDB Defendants' arguments, and an opposition to Plaintiff's motion for an extension of time to file his notice of appeal alongside accompanying exhibits, (Docs. 136, 137). That same day, on December 9, 2025, GDB Defendants also filed their opposition to Plaintiff's motion for reconsideration, (Doc. 140), and an opposition to Plaintiff's motion for an extension of time to file his notice of appeal, (Doc. 141), incorporating the Bank Defendants' arguments. On December 16, 2025, Plaintiff filed his affidavit in support of his request for an extension of time to file his notice of appeal. (Docs. 144, 145.) On December 23, 2025, Plaintiff filed a 5-page "Notice of Supplemental Authority." (Doc. 146.) On December 24, 2025, Plaintiff filed his motion for sanctions against Defendant Spring Bank, Spring Bank employee Carol Guzman

("Guzman"), Kaufman Dolowich, and attorneys Brett A. Scher and Adam M. Marshall pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and "this Court's inherent authority," (Doc. 148 at 1), and an accompanying addendum, (Doc. 149). On January 17, 2026, Plaintiff also filed his reply brief in support of his second motion for reconsideration. (Doc. 157.)[3] On February 6, 2026, the Bank Defendants filed their opposition to Plaintiff's sanctions motions and a cross-motion for sanctions requesting a filing injunction. (Docs. 168–70.) On February 27, 2026, Plaintiff filed his reply in support of his motion for sanctions and in opposition to the Bank Defendants' cross-motion for a filing injunction. (Doc. 181.) Plaintiff has also filed several other motions, including a letter motion for limited early discovery, (Doc. 165), and a renewed application for injunctive relief, (Docs. 162, 163, 185). On September 10, 2026, the Second Circuit issued a "Notice of Required Case Status Update" regarding Plaintiff's appeal, noting that since "at least one motion cited in FRAP 4(a)4 has been filed in the district court[,] this appeal is stayed pending resolution of the motion(s)." (Doc. 186.)

## II. Legal Standards

### A. *Motion for Reconsideration*

"The Federal Rules of Civil Procedure allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Rule 59(e) or a motion seeking relief from the judgment pursuant to Rule 60(b)." *Apex Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, No. 11-CV-9718, 2017 WL 456466, at *6 (S.D.N.Y. Feb. 1, 2017). Rule 59(e) is "a device to relitigate the original issue decided by the district court, and [it is] used to allege legal error." *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) (internal

[3] I note that throughout this litigation, Plaintiff has filed several requests to file an oversized brief. (*See* Docs. 117, 122, 129, 150.) While I have granted most of these requests, out of solicitude for Plaintiff's pro se status, (*see* Docs. 125, 167), I have also sometimes denied Plaintiff's request and indicated that I would not consider his oversized brief, (*see* Doc. 153).

quotation marks omitted). Meanwhile, "Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005).

"The standards governing motions under Local Rule 6.3, . . . [Federal Rule of Civil Procedure] 59(e)[,] and 60(b) are the same." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016). Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *United States v. Yudong Zhu*, 41 F. Supp. 3d 341, 342 (S.D.N.Y. 2014) (internal quotation marks omitted). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

A motion brought pursuant to Rule 59(e) may be granted "only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014), *aff'd sub nom.*, 822 F.3d 620 (2d Cir. 2016) (internal quotation marks omitted). It is "well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). Whether to grant or deny a motion for reconsideration "is within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10-CV-3753, 2012 WL 2878085, at *1 (S.D.N.Y. July 11,

2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

Rule 60(b) is similarly narrow and permits a district court to vacate a final judgment in the interest of "substantial justice." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (internal quotation marks omitted). This rule is intended to "preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Desarrolladora Farallon S. De R.L. De C.V. v. Cargill, Inc.*, No. 15-CV-532, 2016 WL 1732754, at *3 (S.D.N.Y. Apr. 29, 2016). Rule 60(b) motions are disfavored and should be granted "only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). That provision is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted). Rule 60(b) identifies six possible reasons why the court may relieve a party from "a final judgment, order, or proceeding":

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Such relief is not typically available, however, "where the moving party seeks solely to relitigate an issue already decided." *Weiming Chen v. Ying-Jeou Ma*, 595 F. App'x 79, 80 (2d Cir. 2015) (summary order) (quoting *Shrader*, 70 F.3d at 257).

Motions for reconsideration must meet certain timeliness requirements. Local Civil Rule 6.3 provides that "[u]nless otherwise provided by the court or by statute or rule (such as Fed. R. Civ. P. 50, 52, and 59), a notice of motion for reconsideration must be served within 14 days

after the entry of the court's order being challenged." Under Rule 59(e), a movant has "28 days after the entry of the judgment" to file a motion to alter or amend a judgment. Fed. R. Civ. P. 59(e). Rule 60(b) relief can be sought later than that, but it "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

Pro se complaints are afforded "special solicitude" and must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted). Even still, pro se litigants are "obligated to comply with the relevant rules of procedural and substantive law." *Doe v. Torres*, No. 05-CV-3388, 2006 WL 290480, at *3 (S.D.N.Y. Feb. 8, 2006). In this regard, pro se plaintiffs are therefore "required to inform themselves regarding procedural rules and to comply with them" in moving for reconsideration. *Zietek v. Pinnacle Nursing & Rehab Ctr.*, No. 21-CV-5488, 2022 WL 624881, at *1 (S.D.N.Y. Mar. 2, 2022) (internal quotation marks omitted); *Turner v. Naphcare*, No. 19-CV-412, 2020 WL 8988671, at *1 (S.D.N.Y. May 13, 2020) (same).

### B. *Rule 11: Sanctions*

Federal Rule of Civil Procedure 11(b) provides that:

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery.

Fed. R. Civ. P. 11(b). A pleading or motion violates Rule 11 if it is "frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002). Rule 11 sanctions may also be imposed where an attorney's "behavior was objectively unreasonable." *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 247 (S.D.N.Y. 2014) (internal quotation marks omitted), *aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast*, 613 F. App'x 1 (2d Cir. 2015) (summary order). If a party is found to have violated Rule 11, they may be subject to sanctions. Fed. R. Civ. P. 11(c). Rule 11 sanctions may apply to pro se litigants. *See Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("While it is true that Rule 11 applies both to represented and *pro se* litigants, the court may consider the special circumstances of litigants who are untutored in the law.").

Rule 11 also sets forth certain procedural requirements. Rule 11 requires that "[a] motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2). This provision is commonly known as the "safe harbor provision." *See Dwelling Mgmt., Inc. v. Mission 8, LLC*, No. 23-CV-02593, 2023 WL 8307986, at *1 (S.D.N.Y. Dec. 1, 2023).

Courts have wide discretion in deciding when sanctions are appropriate. *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("[S]anctions under Rule 11 are discretionary, not mandatory."). Rule 11 sanctions should be granted with caution and applied only when "a particular allegation is utterly lacking in support." *In re Highgates Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (internal quotation marks omitted).

After determining that sanctions are appropriate, courts wield "'significant discretion in determining what sanctions, if any, should be imposed for a violation,' bearing in mind 'that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.'" *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 11 Advisory Committee Notes).

### C. *Extension of Time to File Notice of Appeal*

Under Federal Rule of Appellate Procedure 4(a)(1)(A), a notice of appeal in a civil case must be filed within thirty days after entry of judgment. Time limits for filing a notice of appeal are "mandatory and jurisdictional." *Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 116 F.3d 53, 55 (2d Cir. 1997) (internal quotation marks omitted). "The district court may extend the time to file a notice of appeal, however, if a plaintiff files a motion within thirty days of the expiration of the time to file [the] notice of appeal, and if the moving party shows excusable neglect or good cause for untimely filing." *Kaambo v. Off. of United Nations Sec'y Gen.*, No. 22-CV-9447, 2023 WL 2734463, at *1 (S.D.N.Y. Mar. 30, 2023) (citing Fed. R. App. P. 4(a)(5)(A)). "The power of the federal courts to extend the time limitation for filing a notice of appeal is severely circumscribed." *Uttarwar v. Lazard Asset Mgmt. LLC*, No. 22-CV-8139, 2026 WL 110322, at *5 (S.D.N.Y. Jan. 14, 2026) (internal quotation marks omitted and alterations adopted). "Despite the flexibility of the 'excusable neglect' standard and the existence of a four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, it is appropriate to focus on the third factor: 'the reason for the delay, including whether it was within reasonable control of the movant.'" *Id.* (quoting *Bass v. NYNEX*, No. 02-CV-5171, 2004 WL 2674633, at *2 (S.D.N.Y. Nov. 23, 2004)).

## III. <u>Discussion</u>

### A. *Plaintiff's Motion for Reconsideration*

#### 1. Procedural Bars to Plaintiff's Motion

As a threshold matter, Defendants argue that Plaintiff's motion for reconsideration under Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e) should be denied as untimely, because Plaintiff was required to file his reconsideration motion by October 2, 2025 under Rule 6.3—or within fourteen days after entry of the Court's judgment on September 18, 2025—and by October 16, 2025 under Rule 59(e)—or twenty-eight days after judgment was entered. (Doc. 140 at 3–4.) Local Civil Rule 6.3 mandates that "[u]nless otherwise provided by the court or by statute or rule (such as Fed. R. Civ. P. 50, 52, and 59), a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." Moreover, under Rule 59(e), a movant has "28 days after the entry of the judgment" to file a motion to alter or amend a judgment. Fed. R. Civ. P. 59(e). However, Plaintiff did file a letter on September 27, 2025 "highlighting several errors in [my] September 12, 2025 Opinion & Order dismissing [his] FDCPA claims," which was styled as a shorter motion for reconsideration. (Doc. 114 at 1.) While his official memorandum in support of his motion for reconsideration was only filed on October 21, 2025, (Doc. 118), I must liberally construe pro se Plaintiff's submissions and interpret them to raise the strongest arguments that they suggest. *See Brooks v. Doe Fund, Inc.*, No. 17-CV-3626, 2020 WL 5706451, at *2 (E.D.N.Y. Sept. 24, 2020). Since Plaintiff's September 27, 2025 letter requests reconsideration on several grounds, I interpret pro se Plaintiff's letter as his initial motion for reconsideration and understand the October 19, 2025 and October 21, 2025 filings to represent supplements to his motion. (*See* Docs. 114, 115, 116, 118). Because Plaintiff filed his initial letter seeking reconsideration on September 27, 2025, I

do not find that his motion is untimely under Local Civil Rule 6.3 or Rule 59(e). *See Zietek*, 2022 WL 624881, at *2 (S.D.N.Y. Mar. 2, 2022) ( "[I]n deference to Plaintiff's *pro se* status and the short delay between the required deadline and Plaintiff's filing date, the Court will assess Plaintiff's motion on the merits."); *see also Walker v. Wolcott*, No. 21-CV-196, 2021 WL 5299196, at *1 (S.D.N.Y. Nov. 15, 2021) ("In deference to Petitioner's *pro se* status, the Court construes his letter as a motion for reconsideration under Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3.")

Defendants also contend that Plaintiff's motion is untimely under Rule 60(b) to the extent it seeks reconsideration or vacatur of my October 4, 2023 opinion dismissing Plaintiff's other FDCPA claims. (*See* Doc. 140 at 11; Doc. 139 at 2–3.) Among his other arguments, Plaintiff attempts to move for reconsideration or vacatur under Rule 60(b)(1), 60(b)(2), 60(b)(3), 60(b)(4), and 60(b)(6). (Doc. 116 at 2; Doc. 118 at 15, 17–27, 31.) To the extent Plaintiff's motion challenges the dismissal of his claims in October 2023 under Rule 60(b)(1), 60(b)(2), and 60(b)(3), the motion is untimely. A motion based on these grounds must be made "no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1); *see also Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 466 F.3d 97, 100 (2d Cir. 2006) ("The one-year limitation period for Rule 60(b) motions is absolute." (internal quotation marks omitted)). "As numerous cases from this Circuit have held, the untimeliness of a motion for reconsideration is reason enough to deny the motion." *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018); *see also*, *e.g.*, *Cooper v. Lapra*, No. 18-CV-9405, 2020 WL 7027592, at *1 (S.D.N.Y. Nov. 30, 2020) (finding "reason enough to deny [the plaintiff's] motion for reconsideration" where the plaintiff offered "no justification for his delay in filing the motion for reconsideration"). Since

Plaintiff filed this motion approximately two years after my initial dismissal order, his arguments under Rule 60(b)(1), (b)(2) and (b)(3) are untimely to the extent they challenge my conclusions in the October 2023 dismissal.

Moreover, even though greater latitude is given for Rule 60(b)(4) and 60(b)(6) motions, which "must be made within a reasonable time," courts still "must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay to determine whether the Rule 60(b) motion was filed within a reasonable time." *Pena v. United States*, 859 F. Supp. 2d 693, 698 (S.D.N.Y. 2012) (internal quotation marks omitted). To the extent his motion challenges my October 2023 dismissal order under Rule 60(b)(4) and Rule 60(b)(6), "[Plaintiff] has not provided any reason for his delay in filing his Rule 60(b)(6) [and Rule 60(b)(4)] motion." *Id.* Furthermore, courts in this circuit have routinely held that even shorter periods of time are unreasonable. *See, e.g.*, *Malik v. Mackey*, 03-CV-0580, 2009 WL 255861 at *1 (S.D.N.Y. Jan. 30, 2009) (motion filed two years after entry of judgment was untimely); *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 76, 77 (2d Cir. 1995) (holding that plaintiff who waited eighteen months to seek reconsideration under Rule 60(b)(6) "plainly did not seek relief from the judgment within a reasonable time"). Accordingly, Plaintiff's motion under Rule 60(b)(4) and Rule 60(b)(6) is also untimely as to the portions seeking to challenge my October 2023 dismissal order. However, with respect to Plaintiff's one remaining FDCPA claim—alleging a violation of 15 U.S.C. § 1692e —which was only dismissed in my September 12, 2025 Opinion, his 60(b) claims are timely.

Finally, Defendants argue that this motion for reconsideration should be "disregarded as procedurally improper," (Doc. 121 at 2), because "[t]his District has emphasized the disapproval of successive motions for reconsideration," (Doc. 140 at 1). Courts in this district have made

clear that plaintiffs are "entitled to a single motion for reconsideration." *Guang Ju Lin v. United States*, No. 13-CV-7498, 2015 WL 747115, at *2 (S.D.N.Y. Feb. 18, 2015); *see also Montanile v. Nat'l Broadcasting Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) ("A Court must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment."). In other words, parties "are not afforded a second chance to move for reconsideration." *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-CV-1761, 2025 WL 2770693, at *1 (S.D.N.Y. Sept. 26, 2025) (internal quotation marks omitted) (collecting cases).

I agree with Defendants that Plaintiff's attempts to challenge the same arguments from his previous reconsideration motion are procedurally barred. However, to the extent Plaintiff contests new conclusions made in the Opinion, this is not necessarily a successive motion that improperly seeks a "duplicative ruling[ ] on previously considered issues." *Montanile*, 216 F. Supp. 2d at 342. It was not until the September 2025 Opinion that I explicitly set out my reasoning for dismissing Plaintiff's remaining FDCPA claim under 15 U.S.C. § 1692e for a lack of Article III standing. *See Senisi v. John Wiley & Sons, Inc.*, No. 13-CV-3314, 2016 WL 1045560, at *2 (S.D.N.Y. Mar. 15, 2016) (finding that the motion for reconsideration was not "an impermissible successive motion" because even though plaintiff "seeks the same relief here that she was denied," "it was not until [a later] Order that the Court explicitly set out its reasoning for dismissing [plaintiff's] claim with prejudice."). Therefore, to the extent Plaintiff seeks to contest the dismissal of his FDCPA claim based on standing, this is not an impermissible successive motion for reconsideration. However, I do not afford Plaintiff a second chance to move for reconsideration on his other arguments.

### 2. Plaintiff's Substantive Motion

Assuming Plaintiff's motion did not suffer from a number of fatal procedural shortcomings, his motion is still substantively flawed. *See, e.g.*, *Safo v. Singh*, No. 19-CV-3779, 2025 WL 2970281, at *4 (S.D.N.Y. Oct. 21, 2025) (evaluating movant's reconsideration motion on its merits, even after noting that it was untimely). Plaintiff makes only one argument that survives the reconsideration standard both procedurally and substantively—that all his claims dismissed for lack of Article III standing should not be dismissed with prejudice. According to the Second Circuit, where "a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice rather than with prejudice." *Faculty v. New York Univ.*, 11 F.4th 68, 78 (2d Cir. 2021) (internal quotation marks omitted). "[W]ithout jurisdiction, the district court lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 54–55 (2d Cir. 2016).

With regard to Plaintiff's other arguments, Plaintiff fails to meet the heavy burden of demonstrating that the requirements of Rule 59(e) or Rule 60(b) are met. He offers several unpersuasive arguments in support of his motion for reconsideration—almost all of which simply repeat previous arguments he has already raised, improperly seek to litigate new claims, or are based on a misunderstanding of the law.

First, the gravamen of Plaintiff's motion for reconsideration hinges on his argument that I erred in finding that he lacks Article III standing for his claim under 15 U.S.C. § 1629e. (*See* Doc. 118 at 2–8.) He argues that I ignored "numerous common law analogues [to the FDCPA] that sound in harassment/abuse predicated like assault, intentional infliction of emotional distress, conversion or trespass to chattels, and abuse of process—none of which require reliance" to show an intangible injury sufficient to establish Article III standing. (*Id.* at 2.)

However, Plaintiff ignores that I specifically considered common law analogues in my September 12, 2025 Opinion, which stated that "common-law fraud, which may involve fraudulent or negligent misrepresentation" was the most plausible analogue. (*See* Doc. 112 at 12.) Given "Congress's rationale for enacting the FDCPA and granting a right to be free from abusive debt practices," some courts have indeed recognized a common-law analog to the "legally cognizable harms" of "fraudulent and negligent misrepresentation." *Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 144 (E.D.N.Y. 2016) (alterations adopted); *see also Martinez v. Jefferson Cap. Sys., LLC*, No. 23-CV-22367, 2024 WL 3548943, at *2 (D.N.J. July 26, 2024) ("The Third Circuit has concluded the nearest common-law analogue for claims brought under Section 1692(e) of the FDCPA is the tort of fraudulent misrepresentation."). Plaintiff does not cite any case law to the contrary to support his claim that "assault, intentional infliction of emotional distress, conversion or trespass to chattels, and abuse of process" could be analogues to the FDCPA. (Doc. 118 at 2.) Nor does he describe factually how these purported common law offenses are analogues to the FDCPA. (*See id.* at 38.) In other words, Plaintiff has not established that these offenses are analogues.

As I also explained the September 12, 2025 Opinion, because Plaintiff "fails to allege any reliance" on Defendants' communication, which is a required element of common-law fraud—the most plausible analogue—"he fails to allege a concrete intangible harm and therefore lacks Article III standing" to bring a claim under 15 U.S.C. § 1629e. (Doc. 112 at 2 (citing *Kola v. Forster & Garbus LLP*, No. 19-CV-10496, 2021 WL 4135153, at *7–8 (S.D.N.Y. Sept. 10, 2021).) Plaintiff attempts to argue that even if reliance is required to show standing, he "satisfies it anyway" because he "was entitled to rely on [Hack's] written representations." (Doc. 157 at 3–4; *see also* Doc. 118 at 35 (noting that he "did rely on Hack's assertions at least for a while").)

This argument is similarly unpersuasive. Although his contention that he was entitled to rely on Defendants' written representations might demonstrate that Plaintiff's reliance was justifiable, Plaintiff still has not shown he "relied on [these communications] in making any decision about paying the debt" or, indeed, that he took any action at all in reliance on Defendants' allegedly deceptive conduct. *Kola*, 2021 WL 4135153, at *7 (finding that plaintiff who received collection letter that was misleading as to amount due lacked standing under FDCPA where she failed to establish that she relied on the letter in making any decision about acting on the debt).

Second, Plaintiff also argues that I erred in determining that he lacked standing because Plaintiff has "actual proven pre-existing chronic health issues." (Doc. 118 at 3.) He contends that "Defendants' misrepresentations [and] knowingly meritless litigation crusade . . . have caused and or aggravated the *physical symptoms of a Plaintiff who is amongst other things a dialysis patient*, and further aggravated his [post-traumatic stress disorder ("PTSD")] causing psychological injury." (*Id.* at 4 (emphasis in original).) Plaintiff points out that parallel cases evaluating standing are "out of place here," because plaintiffs in these cases were not "dialysis patients" or "persons suffering from chronic illness." (*Id.* at 5.) These arguments are not addressed in Plaintiff's complaint, nor were they raised while Plaintiff briefed Defendants' motion to dismiss or the first motion for reconsideration. Even if I were to determine, given the special solicitude granted to pro se litigants, that his argument could be inferred from the Complaint, Plaintiff cannot raise this argument for the first time now when he had multiple prior opportunities to do so. A motion for reconsideration is not the proper forum to raise arguments that could have been made before. *See Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) (noting that a motion for reconsideration precludes a movant from "re-litigating issues already decided or raising arguments that could have been made prior to the entry of judgment"); *see also Storms*

*v. United States*, No. 13-CV-811, 2015 WL 7429999, at *9 (E.D.N.Y. Nov. 20, 2015) ("Plaintiff[] had an adequate opportunity to raise these arguments in opposing Defendants' motion, and may not raise these arguments for the first time in support of [his] motion for reconsideration.").

Even if I were to consider the substance of Plaintiff's argument, it also fails on the merits. As an initial matter, to establish standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations marks omitted and alterations adopted). Other than Plaintiff's conclusory statements that Defendants' misrepresentations have aggravated Plaintiff's PTSD and physical symptoms and generalized allegations that "being deceived can aggravate PTSD," (Doc. 118 at 6), he provides no specific evidence that any of his health conditions are actually traceable to GDB Defendants' alleged misrepresentations. *See Spitz v. Caine & Weiner Co., Inc.*, No. 23-CV-7853, 2024 WL 69089, at *4 (E.D.N.Y. Jan. 5, 2024) ("[F]ear, anxiety, stress, increased heartrate, and difficulty with sleep [are not] injuries-in-fact, at least when they are asserted in the conclusory manner of these complaints. The reason these allegations can be repeated across cases in cookie-cutter complaints is that they don't really mean anything and can rarely be disproven." (internal quotation marks omitted)); *see also McLeod v. Portfolio Recovery Assocs., LLC*, No. 24-CV-4834, 2024 WL 3966099, at *1 (E.D.N.Y. Aug. 28, 2024) (finding that "anxiety," "extreme mental headaches," and "emotional harm" from alleged errors on plaintiff's credit report were insufficient to establish standing in FDCPA case). Plaintiff's lab reports chronicling his medical diagnoses, without anything further, cannot establish causation. (*See, e.g.*, Docs., 132-6, 132-9.)

Moreover, although Plaintiff submits a medical declaration from his provider explaining that the stress of defending against litigation has adverse effects on patients like Plaintiff, (Doc. 132-10), he proffers no evidence, beyond conclusory statements in his motion, that Defendants' complained-of-conduct actually caused or worsened any of his medical conditions.

Third, Plaintiff also attempts to establish standing by alleging, for the first time, that he suffered tangible harm. In his second reconsideration motion, Plaintiff argues that he expended time, paid fees, and incurred costs in defending against Defendant Spring Bank's counterclaims in *Wimberly v. Spring Bank, N.A.*, Index No. 651535/2022 (Sup. Ct. N.Y. Co.) (the "State Action"). (Doc. 118 at 11.) However, "the burdens of bringing a lawsuit cannot be the sole basis for standing." *Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 144 (E.D.N.Y. 2021); *see also Grinblat v. Frontline Asset Strategies, LLC*, No. 22-cv-4467, 2023 WL 5002474, at *3 (S.D.N.Y. Aug. 4, 2023) (dismissing plaintiff's claims because "the expenditure of time alone is insufficient to establish standing unless it is inextricably linked to a concrete, tangible injury, which [p]laintiff has not shown here."). In fact, "[c]ourts in this Circuit have repeatedly found the expense of money, such as legal fees, to determine a course of action in response to a FDCPA violation to not allege a concrete harm." *Levy v. Law Offs. of J. Henry Nierman*, No. 17-CV-4022, 2024 WL 2274100, at *3 (S.D.N.Y. May 20, 2024) (collecting cases). In addition, the burdens and costs incurred by bringing an affirmative lawsuit based on a FDCPA violation "cannot be the sole basis for standing." *See Pollak v. Portfolio Recovery Assocs., LLC*, No. 21-CV-6738, 2022 WL 580946, at *1 (E.D.N.Y. Feb. 24, 2022)) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)). "Only where the expense of money is inextricably bound up in a cognizable injury, such as where a plaintiff faces a sufficient risk of harm [] from the FDCPA violation, and then spends time, money, and effort mitigating that risk, can such an

expense constitute a concrete harm sufficient to confer standing." *Levy*, 2024 WL 2274100, at *3 (internal quotation marks omitted). Moreover, this is not a case where Plaintiff has retained counsel to defend against an "improper lawsuit" in contravention of the FDCPA. *See id.* Indeed, I have previously rejected Plaintiff's argument that the filing of these counterclaims is a violation of the FDCPA altogether, (Doc. 112 at 6), contravening Plaintiff's argument that he is expending resources to defend against baseless litigation that likely violates the FDCPA. In any event, because Plaintiff could have, but failed to make such a standing argument about these alleged tangible harms before, his argument likewise is doomed and must be rejected. *See Ethridge*, 49 F.4th at 688.

Fourth, Plaintiff contends that Defendant Spring Bank's counterclaims in the State Action are improper because: (1) they did not arise out of the same "transactions or occurrences" giving rise to plaintiffs' claims, (Doc. 118 at 19–20); and (2) I erred in ruling that Defendant Spring Bank's counterclaims in the State Action were timely, (*id.*; Doc. 157 at 5–6, 41–46). Regarding whether Spring Bank's counterclaims arose out of the same transaction or occurrence, once again, Plaintiff cannot raise this argument for the first time in his second motion for reconsideration when he had ample opportunity to do so in his numerous prior briefs. *See Ethridge*, 49 F.4th at 688. Moreover, this argument is best left to the state court to address, as it concerns pending litigation there. Additionally, I have already addressed Plaintiff's argument that CPLR 214-i—which amended the Consumer Credit Fairness Act on April 7, 2022—retroactively changed the statute of limitations from six years to three years, and therefore Defendant Spring Bank's counterclaims are untimely. Plaintiff made this exact argument in his memorandum of law in support of his application for leave to amend, (*see* Doc. 59 at 7–8), and his first motion for reconsideration, (Doc. 94 at 2–8.) I have already rejected these same

arguments twice, and because Plaintiff attempts to relitigate for a third time an issue I already have decided, this argument also fails. *See Ethridge*, 49 F.4th at 688.

Fifth, Plaintiff argues that the Opinion erred in ruling that filing a lawsuit is not a violation of the FDCPA. (Doc. 114 at 1; Doc. 157 at 2.) Plaintiff argues that because Defendants' state court counterclaim is meritless, and Hack's 2022 email threatened litigation, this is a violation of the FDCPA. (Doc. 118 at 41–45.) He argues that this decision "conflicts with controlling and persuasive authority, and overlooks material aspects of both law and fact that compel a different outcome." (Doc. 114 at 1.) I have already considered and rejected this argument, both in my October 4, 2023 opinion granting in part and denying in part Plaintiff's motion to dismiss, (Doc. 78 at 11 ("Filing a lawsuit to collect a debt—or here a counterclaim—even if that suit is without merit, does not violate Section 1692.")), and in my September 12, 2025 decision considering Plaintiff's prior motion for reconsideration, (Doc. 112 at 6 (finding that I had already considered and rejected Plaintiff's argument that "filing a knowingly meritless lawsuit is a violation of the FDCPA").

Regardless, the additional cases Plaintiff cites do not change this outcome. Plaintiff cites *Larsen v. JBC Legal Group, P.C.*, 533 F. Supp. 2d 290, 302 (E.D.N.Y. 2008) to argue that if "mere threat [of legal action] violates the statute, then actually filing the lawsuit must be actionable." (Doc 114 at 1.) However, the court in *Larsen* held that "an explicit threat of litigation or an implication that legal action is inevitable, when such is not the case, will violate" the FDCPA. 533 F. Supp. 2d at 302 (internal quotation marks omitted). In other words, a violation under 15 U.S.C.§ 1692e requires that the Plaintiff establish that "[D]efendants had no intention of ever bringing legal action against [him]." *Id.* at 303 ("Although it is permissible for a debt collector to seek to collect on a time-barred debt voluntarily, it is prohibited from

threatening litigation with respect to such a debt.") The situation here is inapposite to *Larsen*—Defendants were not threatening Plaintiff with litigation that "cannot be legally taken." *Id.* (internal quotation marks omitted). Indeed, I already determined in my October 4, 2023 Opinion & Order that Plaintiff's attempts to label Spring Bank's state counterclaims against him as "'untimely' and past the statute of limitations" are incorrect. (Doc. 78 at 16.) This is not an instance where Defendants were threatening legal action that they could not bring and had no intention of bringing.

In his reply brief, Plaintiff also cites *Eades v. Kennedy, PC Law Offices.*, 799 F.3d 161 (2d Cir. 2015) in support of his proposition that "filing a lawsuit where recovery is precluded as a matter of law is a violation of the FDCPA." (Doc. 157 at 2.) Once again, in support of this, Plaintiff argues that Defendants are bringing an action seeking to recoup a time-barred debt. (Doc. 118 at 42–43.) However, Plaintiff's argument has already been raised and considered by my prior opinions. (*See generally* Docs. 78, 112.) "The filing of a lawsuit to collect a debt—even if the lawsuit is meritless—is not properly understood as 'conduct the natural consequence of which is to harass, oppress, or abuse any person' under [the FDCPA].'" *Lawtone-Bowles v. Baum*, No. 25-CV-1218, 2025 WL 2295253, at *4 (S.D.N.Y. Aug. 6, 2025). Plaintiff cites several other cases for his incorrect proposition that "[f]iling a meritless lawsuit is an FDCPA violation," but these cases are all out of circuit cases that do not support this finding. (*See* Doc. 114 at 1.) Indeed, Plaintiff cites *Bouye v. Bruce* for his argument—but the Sixth Circuit court made clear that a concrete injury is alleged only when a party "had to defend against a state lawsuit that [Defendant] had no right to bring in the first place," which is not the case here. 61 F.4th 485, 490 (6th Cir. 2023). Another case Plaintiff cites, *Phillips v. Asset Acceptance, LLC*, also acknowledges that a debt collector using a "pending legal action to pressure a debtor to pay

back the debt informally, without serving the complaint" is "precisely the type of unfair practice prohibited by the FDCPA"—which, again, is not the case here. 736 F.3d 1076, 1083 (7th Cir. 2013). Defendants are not threatening legal action they cannot take. They are fully litigating their state court counterclaims, and the existence of a lawsuit itself cannot constitute an FDCPA violation. *See Larsen*, 533 F. Supp. 2d at 302 (Where "the communication only advises a debtor that the collection agency has several options with which to pursue the debt, this too will generally be found insufficient to constitute a threat in violation of Section 1692e." (internal quotation marks omitted)). Because Plaintiff's arguments are based on a misunderstanding of the law and because he attempts to relitigate an issue I have already decided, these arguments fail. *See Ethridge*, 49 F.4th at 688.

Sixth, Plaintiff argues that reconsideration is warranted under Rule 60(b)(2) for newly discovered evidence, based on: (1) newly diagnosed health conditions, some of which were discovered in February 2025, (Doc. 157 at 4), and (2) the Bank Defendants' supposedly improper use of a "confidential ADA settlement agreement reached with Plaintiff's prior employer" during Plaintiff's deposition in the State Action, (Doc. 118 at 18). Rule 60(b)(2) permits relief from a judgment or order when the movant has shown newly discovered evidence and:

> that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001). "Relief is warranted only when all four of these criteria are met." *Mader v. Experian Info. Sols., LLC*, No. 19-CV-3787, 2021 WL 4037847, at *2 (S.D.N.Y. Sept. 3, 2021).

Plaintiff's health diagnoses were not newly discovered evidence. Plaintiff has had notice

of these conditions since February 2025, and he could have raised this information in his previous motion to reconsider. "[I]f a party has notice that particular evidence exists, the party cannot claim that the evidence is newly discovered." *Lurch v. Chaput*, No. 16-CV-2517, 2023 WL 5609097, at *2 (S.D.N.Y. Aug. 30, 2023). Plaintiff's argument regarding the state court deposition also fails. Regardless of the other factors, nothing about Defendants' use of this settlement agreement during Plaintiff's state court deposition would constitute a violation of the FDCPA nor would it have allowed me to sustain Plaintiff's claims against the Bank Defendants. In presenting this new evidence, Plaintiff avers that this "discriminatory" action is barred under the FDCPA, because it prohibits "debt collectors" from attempting to collect a debt. (Doc. 118 at 18.) I rejected Plaintiff's argument that the Bank Defendants are debt collectors more than two years ago in my October 4, 2023 Opinion, dismissing all claims against the Bank Defendants. (*See* Doc. 78 at 8 ("The Bank Defendants argue that because they are not debt collectors, Plaintiff cannot state a claim against them under the FDCPA. . . . I agree.).) Thus, as I discussed above, Plaintiff's argument is barred as untimely. Further, Plaintiff's inclusion of this deposition as newly discovery evidence—when Defendants are allowed to introduce evidence to impeach credibility and this settlement agreement is on a public docket, *Wimberly v. Red Points Solutions, Inc.*, No. 1:20-cv-1547 (S.D.N.Y.)—does not change any legal outcomes and does not meet the high standard of Rule 60(b)(2).

Seventh, Plaintiff newly argues that Defendant Spring Bank should be held "vicariously liable" under the FDCPA. (Doc. 118 at 8.) Moreover, under Rule 60(b)(3), Plaintiff argues that this constituted fraud or misrepresentation because "Defendant's counsel affirmatively misrepresented his and his firm's status as 'non-debt collectors.'" (*Id.* at 22.) "A debt collector may be vicariously liable for its agent's FDCPA violations." *Bodur v. Palisades Collection,*

*LLC*, 829 F. Supp. 2d 246, 258 (S.D.N.Y. 2011). However, I have already held that the Bank Defendants are not debt collectors, so Plaintiff cannot state a claim against them under the FDCPA. (*See* Doc. 78 at 8.) Moreover, Plaintiff's argument regarding this point also fails for obvious reason; I have already dismissed the FDCPA claims against all Defendants in this action. There is no agent for which Spring Bank could even be vicariously liable. Plaintiff's attempt to raise an argument under Rule 60(b)(3), or fraud, is simply a refashioning of his claims under 15 U.S.C.§ 1692e, which also were already dealt with in the September 12, 2025 Opinion. Thus, Plaintiff's arguments fail here too.

Eighth, Plaintiff argues that I erred in dismissing the case without giving leave to amend. (Doc. 118 at 15–16, 17–18; Doc. 157 at 3.) He contends that since the "underlying facts or circumstances relied up on by [] plaintiff may be a proper subject of relief," he should be given leave to amend—especially since there is no evidence of undue delay, bad faith, repeated failures to cure, undue prejudice, or futility. (Doc. 157 at 3.) Plaintiff's request to amend has already been raised and addressed. In response to Plaintiff's first motion for reconsideration, I found that amendment would be futile for all the claims. (Doc. 112 at 12–13.) Plaintiff "may not use a motion for reconsideration to present arguments already rejected." *Goldfarb v. Channel One Russia*, No. 18-CV-8128, 2021 WL 1392850, at *7 (S.D.N.Y. Apr. 13, 2021). "Ordinarily a pro se plaintiff is given an opportunity to amend a complaint; however, even when 'special solicitude' is afforded to pro se pleadings, leave to amend is not required if it would be futile." *Terry v. City of New York,* No. 19-CV-9688, 2021 WL 517935, at *4 (S.D.N.Y. Feb. 10, 2021).

Moreover, even though I find that any claims dismissed for a lack of Article III standing should not be dismissed with prejudice, the "interests of justice [do] not require granting Plaintiff an additional opportunity to amend his complaint." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435,

444 (2d Cir. 2022). At this stage, Plaintiff has had numerous bites at the apple through successive reconsideration motions. "A dismissal for lack of jurisdiction without leave to amend is not the same thing as a dismissal with prejudice," because "a dismissal without prejudice, even one denying leave to amend, does not preclude another action on the same claims." *Id.* at 445 (internal quotation marks omitted). Accordingly, I deny Plaintiff's request for leave to amend on all his claims.

Ninth, Plaintiff again attempts to argue a conspiracy count against Defendants, alleging that they violated 42 U.S.C. § 1985 because Defendants "sought to deny the disabled Plaintiff" the protections of various federal and state statutes and they "are engaged in a gambit to deny him" access to his civil rights. (Doc. 157 at 9.) However, I already considered and rejected this claim in my October 4, 2023 Opinion & Order. (*See* Doc. 78 at 15–17.) Other than conclusory statements that Defendants attempted to deny a disabled individual access to his civil rights, Plaintiff does not offer anything else. Plaintiff cannot relitigate the exact argument he already raised on a motion for reconsideration, *see Ethridge*, 49 F.4th at 688, nor does he present any new or meritorious arguments under this claim.

Finally, Plaintiff attempts to make several additional arguments for the first time, without providing further evidence, in his second motion for reconsideration. Plaintiff attempts to brings claims under: (1) the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, arguing that Defendants are discriminating and retaliating against him by continuing to take actions against Plaintiff in the state court proceedings, (Doc. 118 at 15); (2) retaliation under the "Treasury anti-reprisal policy" and "Equal Credit Opportunity Act," (Doc. 157 at 9–10); (3) Rule 60(b)(4) because the judgment is "inconsistent with due process of law, (Doc. 157 at 5–6 (internal quotation marks omitted)); and (4) Rule 60(b)(6) because "Plaintiff

suffers from chronic and severe medical conditions," which substantially hindered his ability to properly argue his case "during the earlier part of these proceedings," (Doc. 118 at 25). Plaintiff does not provide further case law or arguments to support these other claims, so they fail as a matter of law. Regardless, because Plaintiff could have but failed to make these arguments before (for example, he has known of his medical issues since February 2025), these claims are likewise doomed and must be rejected. *See Ethridge*, 49 F.4th at 688.

In sum, because Plaintiff either recycles previous arguments that the September 12, 2025 Opinion rejected or proffers new arguments that he could have raised before but failed to do so, I reject each of his substantive arguments for reconsideration, except his argument regarding the dismissal of his claims based on Article III standing defects. Plaintiff fails to demonstrate why the "extraordinary remedy" of reconsideration is proper here. *Yudong Zhu*, 41 F. Supp. 3d at 342 (internal quotation marks omitted). Accordingly, Plaintiff's motion for reconsideration is GRANTED as to his claim that my dismissal based on Article III standing in my previous September 2025 Opinion should be without prejudice, but without leave to amend, and DENIED as to all other claims.

### B. *Motion for Sanctions*

Plaintiff files for sanctions against Defendant Spring Bank, its counsel Adam M. Marshall and Brett A. Scher, and their law firm, Kaufman Dolowich & Voluck, LLP. (Doc. 148 at 1.) In response, the Bank Defendants move for a filing injunction against Plaintiff. (Docs. 168–70.) I evaluate these motions in turn.

#### 1. Plaintiff's Motion for Sanctions

In his motion for sanctions, Plaintiff alleges that this motion "arises from the submission of a materially false affidavit sworn under penalty of perjury by Carol Guzman, Spring Bank's

Community Development Portfolio Manager, which was filed in both state court proceedings and subsequently in this federal action as Docket Entry 65-1 on June 12, 2023." (Doc. 148 at 1.) Plaintiff also invokes Rule 11(c)(3) and invites me to sua sponte initiate sanctions proceedings. (*Id.*) As a threshold matter, I must dismiss Plaintiff's sanctions motion because it does not comply with the safe harbor provision outlined in Federal Rule of Civil Procedure 11(c)(2). There is no indication that Plaintiff complied with Rule 11's procedural requirement that a sanctions motion be served on the offending party twenty-one days before it is filed with the court. Plaintiff did not file an affidavit of service indicating that his sanctions motion was served on Defendant Spring Bank or its lawyers prior to being filed. Because "[c]ompliance with Rule 11's safe harbor provision is mandatory . . . failure to do so will result in a denial of the sanctions motion." *Libaire v. Kaplan*, No. 06-1500, 2008 WL 794973, at *12 (E.D.N.Y. Mar. 24, 2008); *see also In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) ("[T]he 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission."); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328–29 (2d Cir. 1995) (rejecting motion for sanctions under Rule 11 because non-movant was not served twenty-one days prior to the sanctions motion); *Targum v. Citrin Cooperman & Co., LLP*, No. 12-CV-6909, 2013 WL 6087400, at *9 (S.D.N.Y. Nov. 19, 2013) ("Regardless of the merits of [the sanctions] motion, [plaintiff's] failure to comply with Rule 11's safe harbor requirement bars any award of sanctions."). A pro se Plaintiff is not excused from following these mandatory procedural safeguards. *See Allen v. Graham*, No. 16-CV-0047, 2016 WL 7165966, at *3 (N.D.N.Y. Dec. 8, 2016) (applying the Rule 11 safe harbor provision for a pro se plaintiff's sanctions motion because it is a "strict procedural requirement" and denying motion

because "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period").

I also decline Plaintiff's "invitation to impose such sanctions *sua sponte*" or initiate such proceedings against Spring Bank and its attorneys. *Lumos Tech. Co. v. JEDMED Instrument Co.*, No. 16-CV-6939, 2018 WL 910588, at *1 (S.D.N.Y. Feb. 14, 2018). While the "21-day safe harbor does not apply" in a sua sponte initiation of sanctions proceedings "and the court may impose sanctions without providing opportunity to withdraw the misstatement," I do not think this constitutes such a "rare[] case[]." *Edison Coatings, Inc. v. Freedom Cement, LLC*, No. 15-CV-2726, 2017 WL 462339, at *1 (S.D.N.Y. Jan. 30, 2017) (internal quotation marks omitted). The Second Circuit has "determined that the power of the court under Rule 11 to issue sanctions *sua sponte* without affording the offender the opportunity to withdraw the challenged document in the manner provided in the 'safe harbor' provision of Rule 11(c)(1)(A), is akin to the court's inherent power of contempt." *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). However, Plaintiff "cannot simply repackage [his] Rule 11 sanctions request as a request for sanctions under the Court's inherent authority" when he "failed to comply with the Rule 11 safe-harbor provision." *Grecia v. Brass Lion Entm't, Inc.*, No. 25-CV-1484, 2026 WL 540539, at *8 (S.D.N.Y. Jan. 2, 2026), *report and recommendation adopted sub nom.* 2026 WL 738578 (S.D.N.Y. Mar. 16, 2026). "This would effectively allow [Plaintiff] to circumvent Rule 11's requirements of procedural fairness, which, as discussed above, are mandatory." *Id.* Nor has Plaintiff shown that Defendant Spring Bank and its attorneys' conduct during the course of this litigation warrants Section 1927 sanctions. *See Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016) (sanctions under Section 1927 are appropriate "against any attorney who so multiplies the proceedings in any case unreasonably and vexatiously" but "only

when there is a finding of conduct constituting or akin to bad faith" (internal quotation marks omitted)).

Consequently, Plaintiff's sanctions motion is denied.

**2. Bank Defendant's Cross Motion for Sanctions**

Also before me is the Bank Defendants' motion for a filing injunction requesting that I require Plaintiff to obtain written permission before initiating new motions in this action. (Doc. 170 at 8.) They contend that Plaintiff has lost multiple times on the merits of his case and that he "*already filed* every conceivable post-judgment motion this Court has jurisdiction to entertain." (*Id.* at 7 (emphasis in original).) The Bank Defendants also argue that these duplicative filings cause "needless expense to the Bank Defendants." (*Id.* at 8.)

"[A] district court may, in its discretion, impose sanctions against litigants who abuse the judicial process." *Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (per curiam) (quoting *Shafii v. British Airways*, PLC, 83 F.3d 566, 571 (2d Cir. 1996)). "Pursuant to that authority a district court may impose filing injunctions subjecting a vexatious litigant to a leave of court requirement with respect to future filings." *SBC 2010-1, LLC v. Morton*, 552 F. App'x 9, 12 (2d Cir. 2013) (summary order). The Second Circuit has listed several factors that courts should consider before enjoining a vexatious litigant:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;
>
> (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?;
>
> (3) whether the litigant is represented by counsel;
>
> (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
>
> (5) whether other sanctions would be adequate to protect the courts and other

parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24. "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.* "The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam).

Weighing the foregoing factors, I find that, at this time, a filing injunction is not warranted. To be sure, Plaintiff has shown a pattern of filing lengthy and repetitive motions in the same week, (*see, e.g.*, Docs. 161–63, 165–66), and he has attempted to re-review my dismissal of most of his claims for a second time here. However, Plaintiff's various filings in this case and in his State Action, without more, do not establish a "pattern" of harassing or vexatious litigation sufficient to justify a filing injunction, even in this one case. *Cf. George v. New York State Div. of Parole*, 685 F. App'x 30, 31 (2d Cir. 2017) (summary order) (affirming district court decision imposing filing injunction where pro se petitioner "filed five essentially duplicative motions for reconsideration"); *Azeez v. City of New York*, No. 16-CV-342, 2020 WL 5554878, at *10 (E.D.N.Y. Sept. 17, 2020) (imposing a filing injunction in the case after pro se plaintiff attempted to litigate a second Rule 60 motion after his arguments were rejected both by the district court and the Court of Appeals); *Klein v. United States*, No. 09-CV-10048, 2018 WL 4382381, at *1 (S.D.N.Y. Sept. 4, 2018) (requesting pro se plaintiff show cause as to why the court should not issue a filing injunction after multiple warnings, "twenty-five separate matters" relating to plaintiff's conviction, and a "flurry of frivolous filings" (internal quotation marks omitted)); *see also Williams v. Office of Child Support*, 2023 WL 2396354, at *4 (sanctioning

pro se plaintiff in a third lawsuit after the dismissal of the same claim against the same defendant twice before). While I do not impose a filing injunction at this time, Plaintiff is cautioned against additional duplicative filings that attempt to relitigate the same issues that have already been raised, considered, and decided.

### C. *Motion for Leave to File Untimely Appeal*

Finally, I consider Plaintiff's motion for leave to file an untimely appeal. (*See* Doc. 120.) After judgment was entered in the case on September 18, 2025, Plaintiff had, at the latest, until October 20, 2025 to file a timely notice of appeal, because the last day of the period to file a notice of appeal—or 30 days after entry judgment—was on October 18, 2025, which fell on a Saturday. *See* Fed. R. App. P. 26(a)(3) (when determining the last day of a period described in the Federal Rules of Appellate Procedure, a Saturday, Sunday, or legal holiday is not included). Therefore, under Rule 4(a)(5)(A)(i), Plaintiff had until November 19, 2025, or 30 days after the notice of appeal deadline, to file a motion for an extension of time to file a notice of appeal. As an initial matter, Plaintiff's extension motion is timely because it was filed on October 22, 2025. (Doc. 120.)

Accordingly, I may grant Plaintiff's request upon a showing of "excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(a)(ii). The advisory committee notes to Rule 4 observe that "[t]he good cause and excusable neglect standards have 'different domains.'" Fed. R. App. P. 4(a)(5)(A)(ii) Advisory Committee's Note (2002 amendments) (*quoting Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 232 (7th Cir. 1990)). In other words, "[e]xcusable neglect and good cause are two distinct standards and therefore may not be used interchangeably." *Amigon v. Luzon*, No. 21-CV-02029, 2026 WL 788269, at *1 (S.D.N.Y. Mar. 20, 2026) (citing *Alexander v. Saul*, 5 F.4th 139, 147 (2nd Cir. 2021). "The excusable neglect

standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant." *Id.* (internal quotation marks omitted). On the other hand, the good cause standard "applies in situations in which there is no fault—excusable or otherwise, such as when the Postal Service fails to deliver a notice to appeal." *Id.* (internal quotation marks omitted).

Plaintiff cites both extrinsic and personal factors that purportedly prevented him from filing a timely notice of appeal. He argues that due to "severe and ongoing medical conditions," which include "end-stage renal disease requiring dialysis, congestive heart failure, and hypertension," and because he received notice of the judgment "on September 24, 2025, six days after entry of judgment," he was not able to timely file his notice of appeal. (Doc. 120 at 1.) In an affidavit, Plaintiff also explains that his "end-stage renal disease" requires "hemodialysis four times weekly, which causes severe and persistent dialysis-related fatigue, cognitive slowing, and limited functional capacity, particularly on dialysis days and the days immediately following treatment." (Doc. 144 at 1.) Moreover, he points to his managing of "multiple active litigation matters" which "required significant attention and filings." (*Id.* at 2.) Although I am sympathetic to his medical conditions, "Plaintiff has not demonstrated that this is a situation in which there is *no fault*—excusable or otherwise, such as when the Postal Service fails to deliver a notice to appeal." *Smith v. City of New York*, No. 23-CV-08229, 2025 WL 2613031, at *1 (S.D.N.Y. Aug. 26, 2025) (emphasis in original) (internal quotation marks omitted and alterations adopted). While Plaintiff points to the six-day delay in receiving his notice of judgment, his "failure to appeal in a timely fashion was at least partially due to [Plaintiff's] own inadvertence, and [I] must apply the excusable neglect standard." *Id.* (internal quotation marks omitted).

"Courts evaluating excusable neglect generally take into account (1) potential prejudice to the non-moving party, (2) the length of the delay and the resulting impact on judicial proceedings, (3) the reason for the delay, including the extent to which it was within the control of the moving party, and (4) whether the moving party acted in good faith." *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04-CV-3600, 2010 WL 479658, at *2 (S.D.N.Y. Feb. 5, 2010) (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)). "[A]although [Plaintiff's] *pro se* status 'is relevant in determining whether there has been excusable neglect,' such status alone is insufficient to satisfy the excusable neglect standard." *In re Nestor,* No. 24-CV-06250, 2024 WL 5119123, at *2 (S.D.N.Y. Nov. 19, 2024) (quoting *In re Soundview Elite Ltd.*, 512 B.R. 155, 157 (S.D.N.Y. 2014)), *report and recommendation adopted*, 2025 WL 2089353 (S.D.N.Y. July 25, 2025). "The first and second factors generally favor the moving party, since the delay could not have exceeded thirty days without barring the motion altogether, and the likelihood of prejudice to the non-moving party is minimal in light of such a short delay," and "[t]he fourth factor is rarely at issue." *Id.* Therefore, "it is appropriate to focus on the third factor: the reason for the delay, including whether it was within reasonable control of the movant." *Bass*, 2004 WL 2674633, at *2 (internal quotation marks omitted).

Here, although Plaintiff suffers from chronic medical conditions and "[d]isruption of [Plaintiff's treatment] schedule due to litigation-related obligations poses serious health risk," (Doc. 132-10), "Plaintiff has not otherwise explained why [his] medical condition prohibited [him] from filing a timely appeal" during this 30-day period. *Smith*, 2025 WL 2613031, at *2. Indeed, as Defendants correctly point out, Plaintiff was able to file other, more complex documents in advance of his October 20, 2025 appeal deadline—including his initial September

27, 2025 letter "highlighting several errors" in my decision, and his lengthy motion for reconsideration brief on October 21, 2025. I acknowledge that Plaintiff was likely trying to meet the reconsideration motion deadline in this case. However, Plaintiff also filed a motion to stay discovery in the underlying State Action on October 12, 2025 and an accompanying 9-page memorandum of law. *See Wimberly v. Spring Bank, N.A.*, Index No. 651535/2022 (Sup. Ct. N.Y. Co.) (Docs. 182, 183) (Oct. 12, 2025). In contrast, "filing a notice of appeal can be accomplished without significant review" and "[t]he filing process requires minimal effort." *Moses v. Colvin*, No. 13-CV-2041, 2014 WL 774654, at *2 (S.D.N.Y. Feb. 25, 2014).

Nothing in Plaintiff's briefs or medical records indicates what would have prevented him from filing this notice of appeal when he was already filing other case documents. *See Sun v. Mo*, No. 24-CV-3630, 2025 WL 2613368, at *2–3 (S.D.N.Y. Aug. 25, 2025) (finding that injury to Plaintiff's "shoulder, neck, and back, and consequent limitation of her range of motion" and "'uninhabitable and unsafe' conditions in her apartment, in the form of 'electrical leakage' from an appliance" did not constitute excusable neglect, particularly where her medical issues had persisted for a few months, and "Plaintiff was an active filer in this case"); *Diedrich v. Kluwer*, No. 23-CV-656, 2024 WL 2883985, at *2 (S.D.N.Y. May 8, 2024) (finding that plaintiff's medical circumstances, while "regrettable," did not "rise to the level of 'excusable neglect'" where records from medical appointments did not explain what "would have prevented him from filing an appeal"). In fact, Plaintiff's medical provider even notes that "[f]ollowing diagnosis and treatment in February 2025, [his] cognitive function has improved substantially." (Doc. 132-10 at 7.) In light of these factors, I find that Plaintiff has not demonstrated excusable neglect. Accordingly, Plaintiff's request for an extension of time to file a notice of appeal is DENIED.

## IV. Conclusion

For the reasons articulate above: (1) Plaintiff's motion for reconsideration, (Docs. 114, 115, 116, 118), is GRANTED in part and DENIED in part, without leave to amend any of his claims; (2) Plaintiff's motion for sanctions, (Docs. 148, 149), is DENIED; (3) the Bank Defendants' cross motion for sanctions regarding a filing injunction, (Doc. 168), is DENIED; (4) Plaintiff's motion for an extension of time to file a notice of appeal, (Doc. 120), is DENIED; and all other motions in this case, including Plaintiff's letter motion for early discovery, (Doc. 165), Plaintiff's motion for judicial notice, (Doc. 177), Plaintiff's motion for leave to renew his application for injunctive relief, (Docs. 162, 163), and Plaintiff's motion for leave to submit supplemental authority in support of his renewed injunction motion, (Doc. 185), are DENIED as moot. This is a final order.

The Clerk of Court is respectfully directed to terminate all pending motions, including those at Documents 116, 120, 148, 149, 150, 165, 168, 177, 182, and 185, and terminate this case. The Clerk of Court is also respectfully directed to mail a copy of this Opinion & Order to Plaintiff. I certify under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: September 25, 2026
New York, New York

Vernon S. Broderick
United States District Judge